**Henry G. EMERSON, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 49S02–9703–PC–190.

Supreme Court of Indiana.

June 11, 1998.

Susan K. Carpenter, Public Defender, Amy E. Karozos, Deputy Public Defender, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, James D. Dimitri, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

The Court of Appeals reversed a trial court's denial of Henry G. Emerson's petition for post-conviction relief. Having granted transfer, we affirm the post-conviction court.

### Background

On July 25, 1986, Henry G. Emerson ("Emerson"), his brother, John Wesley Emerson, and Derrick Jones attacked Robert Brown and his son, Lynn Brown, as the latter two were playing cards in Douglass Park in Indianapolis. The two Emersons and Jones beat Robert with their fists and Lynn with sticks, and Jones stabbed Lynn in the chest with a knife.

A jury convicted Emerson of two counts of Battery [1] and, in a separate proceeding, adjudicated him to be a Habitual Offender.[2] The trial court sentenced Emerson to a term of thirty-five years: five years for class C felony Battery, plus a thirty year enhancement for the habitual offender conviction, and a six month concurrent sentence for class B misdemeanor Battery. This Court affirmed Emerson's convictions and sentence. *Emerson v. State*, 539 N.E.2d 5 (Ind.1989). On February 14, 1995, Emerson filed an amended petition for post-conviction relief, which the trial court denied on October 3, 1995. On appeal, the Court of Appeals held that the trial court's jury instruction on Battery impermissibly deviated from the charges filed against Emerson, reversed Emerson's convictions and sentence for class C felony Battery and Habitual Offender, and remanded for retrial. *Emerson v. State*, 675 N.E.2d 721 (Ind.Ct.App.1996). The State petitioned this Court for transfer, which we granted on March 11, 1997.

### Discussion

Emerson presents for our consideration the following issues: (1) whether the trial court committed fundamental error when it instructed the jury on the definition of Battery; (2) whether the trial court erroneously sentenced Emerson on the habitual offender

---

1. Ind.Code § 35–42–2–1 (1982 & Supp.1986).

2. Ind.Code § 35–50–2–8 (1982 & Supp.1985).

conviction; and (3) whether Emerson received effective assistance of both trial and appellate counsel.

At the trial on his petition for post-conviction relief, Emerson had the burden of establishing any grounds for relief by a preponderance of the evidence. Ind.Post—Conviction Rule 1(5). To the extent the post-conviction court denied relief, Emerson appeals from a negative judgment, and must convince the appeals court that the evidence as a whole led unerringly and unmistakably to a decision opposite that reached by the trial court. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995) (citing *Williams v. State,* 508 N.E.2d 1264, 1265 (Ind.1987); *Lowe v. State,* 455 N.E.2d 1126, 1128 (Ind. 1983)). Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the reviewing court disturb the decision as being contrary to law. *Spranger,* 650 N.E.2d at 1120 (quoting *Fleenor v. State,* 622 N.E.2d 140, 142 (Ind.1993), *cert. denied,* 513 U.S. 999, 115 S.Ct. 507, 130 L.Ed.2d 415 (1994)).

## I

Emerson prevailed at the Court of Appeals on his claim that the trial court committed fundamental error when it instructed the jury on the crime of Battery as follows: [3]

A part of the Statute of the State of Indiana which defines and states the essential elements of the crime of Battery, a Class C felony, with which the defendants are charged in Count Two of the Information, reads as follows:

"A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits bat-

tery ... a Class C felony if it results in *serious bodily injury* to any other person or if it is committed by means of a deadly weapon."

(T.R. at 112; 134 (emphasis added).) [4]

The Court of Appeals found that this instruction impermissibly deviated from the charge of class C felony Battery filed against Emerson. *Emerson,* 675 N.E.2d at 726 (overly broad instruction permitted jury to convict defendant of crime not properly charged). The charging information read as follows: [5]

... HENRY G. EMERSON, on or about the 25th day of July, A.D.1986, at and in the County of Marion and the State of Indiana, did knowingly touch LYNN BROWN in a rude, insolent or angry manner, to-wit: STRUCK, STABBED AND CUT LYNN BROWN, *by means of deadly weapons,* to-wit: STICKS AND A KNIFE....

(T.R. at 15 (emphasis added).)

In reaching this decision, the Court of Appeals relied heavily on *Kelly v. State,* 535 N.E.2d 140 (Ind.1989). In *Kelly,* the defendant was charged with non-consensual criminal confinement, but the court instructed the jury on the statutory definition of criminal confinement, which includes both non-consensual criminal confinement and criminal confinement by removal. 535 N.E.2d at 141. The jury convicted the defendant on a general verdict. On appeal, this Court reversed, holding that the jury instruction constituted prejudicial error because it was impossible to tell on which charge the jury had convicted the defendant.

This Court recently distinguished the *Kelly* holding from a situation almost identical to Emerson's in *Potter v. State,* 684 N.E.2d 1127 (Ind.1997), [6] noting that the crux

---

**3.** Emerson alleges that trial counsel's failure to object to this instruction constituted ineffective assistance. Because we determine here the propriety of the instruction, we do not revisit extensively the claim as one of ineffective assistance of counsel in Part III–A–2, *infra.*

**4.** "T.R." refers to the record of the trial proceedings. "R." will refer to the record of the post-conviction proceedings.

**5.** The trial court read the charging information to the jury in Preliminary Instruction No. 7.

**6.** The defendant in *Potter v. State,* 684 N.E.2d 1127 (Ind.1997), was charged with, *inter alia,* class A felony Rape for committing rape while armed with a deadly weapon. The court instructed the jury that rape as a class A felony includes rape "committed by using or threatening the use of deadly force, if it is committed while armed with a deadly weapon, or if it re-

of our decision in *Kelly* was that the State had not tendered evidence sufficient to prove the crime of confinement as charged, but had offered evidence tending to prove the crime as erroneously instructed. In *Potter*, this noticeable disparity between the evidence presented and the crime as charged was lacking, and we commented that a finding of prejudicial error requires more than an overly broad jury instruction. 684 N.E.2d at 1132. Prejudice requires harm to the defendant, for example, by misleading the jury as to the applicable law. *Dixon v. State*, 425 N.E.2d 673, 678 (Ind.Ct.App.1981). There is no prejudicial error if the jury is instructed expressly on the charge against the defendant, and the State offers evidence to prove that charge. *Evans v. State*, 571 N.E.2d 1231, 1235 (Ind.1991); *Dixon*, 425 N.E.2d at 678 (also noting that State did not tender proof to support uncharged crime). *See McIntosh v. State*, 638 N.E.2d 1269, 1275 (Ind.Ct.App.1994), *trans. denied.* Nor is there prejudice if the jury is aware it can convict the defendant only upon the crime as charged. *McIntosh*, 638 N.E.2d at 1275; *Dixon*, 425 N.E.2d at 678. *See Evans*, 571 N.E.2d at 1235.

Emerson's situation is much more like *Potter* than like *Kelly*. While Emerson correctly argues that the jury instruction on Battery exceeded the scope of the crime as charged, and that the State presented evidence supporting the uncharged crime, *i.e.*, battery resulting in serious bodily injury, it is also true that the State presented sufficient evidence to prove Emerson committed battery with a deadly weapon. Lynn Brown, Emerson's victim, testified on behalf of the State that Emerson beat him with sticks or "tree limbs." Emerson does not dispute this fact, nor does he challenge the characterization of "tree limbs" as deadly weapons. Further-

more, the definition of "deadly weapon" on which the jury was instructed includes the concept of "serious bodily injury:"

> I instruct you that under the law of Indiana, a "deadly weapon" means: (1) A loaded or unloaded firearm; or (2) A weapon, device, equipment, chemical substance or other material that in the manner it is used or could be used, or is intended to be used, is readily capable of causing *serious bodily injury*.

(T.R. at 115; 137 (emphasis added).)

Therefore, evidence tending to prove that Emerson used an instrument readily capable of inflicting serious bodily injury was necessary to prove that Emerson used a deadly weapon when he battered Lynn.

■ Moreover, we will find fundamental error in the giving of instructions only if the instructions read together as a whole fail to alleviate any harm that might have occurred from one erroneous instruction. *Dixon*, 425 N.E.2d at 678. Here, the court instructed the jury on the charges of Battery filed against Emerson; this instruction did not include a charge of Battery resulting in serious bodily injury. The court instructed the jury on the definition of a deadly weapon, which included the concept of serious bodily injury, but not on the definition of serious bodily injury itself. Unlike the jury in *Kelly*, which received a general verdict form, the jury here received a verdict form which properly delineated the charge of battery.[7] Most importantly, the trial court instructed the jury that it was not to consider any single instruction by itself, but that it should consider all instructions together as a whole.[8] *See Dixon*, 425 N.E.2d at 678.

We find that, although the instruction on Battery exceeded the scope of the crime with which Emerson was charged, giving it did

---

sults in *serious bodily injury* to a person other than a defendant." *Potter*, 684 N.E.2d at 1131 (emphasis added). The defendant argued that "his counsel was ineffective for failing to object to a jury instruction defining ... rape broader than did the charge contained in the information." *Id.*

7. "We, the Jury find the defendant [insert name here] guilty of the crime of Battery, a Class C felony, as charged in Count Two of the Informa-

tion." (T.R. at 140.) Count Two charged Emerson with Battery with a deadly weapon.

8. "[I]n considering any one instruction you should construe it in connection with, and in the light of every other instruction given; and, so considering and construing, apply the rules of principles of law stated therein to all of the evidence admitted during the trial to which you may find the instruction to be applicable." (T.R. at 105.)

not constitute fundamental error. Emerson has not demonstrated that without that instruction, the jury would not have convicted him of class C felony Battery. As such, we hold that the Court of Appeals erred in reversing Emerson's convictions and sentence on this claim and affirm the post-conviction court on this issue.

## II

The Court of Appeals found the issue discussed *supra* dispositive and did not address the merits of Emerson's remaining claims. Because we affirm the post-conviction court on the first issue, we now address the other claims raised by Emerson in his appeal from the denial of post-conviction relief.

■ Emerson argues that the sentencing judge erroneously believed the thirty year habitual offender enhancement was mandatory and did not know he could reduce Emerson's enhancement by up to ten years.[9]

Ind.Code § 35–50–2–8 provides for a mandatory habitual offender enhancement of up to thirty years when the State proves beyond a reasonable doubt that the defendant has been convicted of two prior unrelated felonies. Ind.Code § 35–50–2–8 (1982 & Supp. 1985). The statute further provides that the sentencing court may reduce the thirty year enhancement by up to ten years if one of the defendant's prior convictions was a class D felony. Ind.Code § 35–50–2–8(e). In this case, the State proved beyond a reasonable doubt that Emerson had accumulated two prior felony convictions:[10] a 1979 conviction for Robbery, a class B felony, and a 1984 conviction for Theft, a class D felony.

Emerson refers us to two statements made by the trial judge during sentencing which he contends indicate the judge's unawareness of the availability of the ten year reduction. At the sentencing hearing, in response to a statement by Emerson's mother that she believed it was wrong for the court "to give him, you know, a whole lots of time for a

habitual," the judge said: "Well, that's what the legislature says, you know." (T.R. at 862.) Later, upon imposing the sentence, the judge stated: "... and because of the finding of you being an habitual offender, the statutory sentence of thirty years sentencing enhancement, which will be consecutive to Counts II and III...." (T.R. at 865–66.)

■ We presume that our trial judges are aware of and know the law. *Boone County REMC v. Layton,* 664 N.E.2d 735, 739 (Ind. Ct.App.1996) (citing *Scott v. State,* 632 N.E.2d 761, 768 (Ind.Ct.App.1994)), *trans. denied.* While both of the above statements indicate an intent to impose an undisturbed thirty year enhancement, neither statement overtly demonstrates ignorance of the law. In further support of his claim, Emerson provided the post-conviction court with affidavits from Lynn Brown and the trial court judge. Lynn Brown stated that he would not have opposed Emerson's receiving a twenty year habitual offender enhancement. The trial judge testified that he could not remember Emerson's case or whether or not he was aware at that time of the availability of the ten year reduction. These statements do not suffice to prove actual ignorance or disregard of the law.

■ Furthermore, whether or not to reduce the thirty-year enhancement rests within the discretion of the trial court. *See Elliott v. State,* 541 N.E.2d 942, 944 (Ind.1989) (finding ten year reduction purely discretionary with trial court); *cf. Garrett v. State,* 602 N.E.2d 139, 142 (Ind.1992) (remanding for resentencing where state conceded that trial court erroneously believed it had no discretion to reduce habitual offender enhancement). Emerson has not proved that the trial judge did anything other than exercise his discretion in sentencing, and we cannot conclude that the post-conviction court reached an incorrect result in denying Emerson's claim for post-conviction relief on this basis given the evidence before it.

---

9. Emerson also argues that trial counsel's failure to alert the judge as to the possibility of a reduced sentence constituted ineffective assistance. Because we dispose of the claim here, we address it only briefly in Part III–A–1, *infra.*

10. The jury returned the following verdict form: "We, the Jury, find the defendant HENRY EMERSON has two (2) prior unrelated felony convictions and guilty as charged in Count Four." (T.R. at 163.)

## III

Finally, Emerson contends that he received ineffective assistance of both trial and appellate counsel. This Court analyzes claims of both ineffective assistance of trial counsel and ineffective assistance of appellate counsel according to the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lowery v. State,* 640 N.E.2d 1031, 1048 (Ind.1994) (standard of review for claim of ineffective assistance of appellate counsel identical to standard for trial counsel). First, we require the defendant or petitioner to show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Lowery,* 640 N.E.2d at 1048. This showing is made by demonstrating that counsel's performance was unreasonable under prevailing professional norms. *Id.* at 1041 (citing *Turner v. State,* 580 N.E.2d 665, 668 (Ind.1991)). Second, we require the defendant or petitioner to show adverse prejudice as a result of the deficient performance. *Id.* at 1048. We will find prejudice when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable. *Id.* (citing *Best v. State,* 566 N.E.2d 1027 (Ind.1991)).

A petitioner claiming ineffective assistance of counsel or ineffective assistance of appellate counsel must show both deficient performance and resulting prejudice. The failure to establish either prong will cause the claim to fail. And where the petitioner claims that appellate counsel was ineffective for failing to argue on direct appeal the ineffective assistance of trial counsel, he or she must establish both deficient performance and resulting prejudice on the part of both trial counsel and appellate counsel. Conversely, the failure to establish either prong with respect to either trial or appellate counsel will cause the entire claim to fail. *Roche v. State,* 690 N.E.2d 1115, 1120 (Ind. 1997), *reh'g denied.* Here, the post-conviction court concluded:

> [P]etitioner was *not* denied the effective assistance of appellate counsel. The evidence before this Court demonstrates that counsel performed competently and effectively.... The Court cannot conclude that appellate counsel was *ineffective for failure* to allege trial counsel's ineffectiveness.[1]

---

[1] Such ineffectiveness is alleged to emanate from trial counsel's failure to argue that the instruction on battery was defective, and that the trial court failed to consider a possible reduction of the sentence enhancement under the habitual offender statute. Inasmuch as the instruction for battery was a correct statement of the law, this Court could not rule that trial counsel was ineffective for failure to object to the instruction. Further, in light of the petitioner's lengthy criminal history, this Court could not conclude that the trial court might have reduced the petitioner's sentence enhancement under the habitual offender statute if a stronger argument had been made to do so.

(R. at 108–109.)

### A

Emerson raises four claims of ineffective assistance of trial counsel: (1) trial counsel failed to recognize that Emerson was eligible for a reduced habitual offender enhancement; (2) trial counsel failed to object to erroneous instructions on battery and prior unrelated felony convictions; (3) trial counsel failed to preserve meritorious issues for appellate review; and (4) trial counsel's performance prejudiced Emerson before the jury. Emerson's first two claims of ineffective assistance of trial counsel duplicate the claims addressed in Parts I and II, *supra.* To the extent we addressed them previously, we decline to do so again here. Emerson has provided in support of this claim of ineffectiveness an affidavit from his trial counsel.

### A–1

Trial counsel did not apprise the trial judge of the availability of a ten year reduction to the thirty year habitual offender enhancement imposed on Emerson and testified via affidavit to this omission as follows:

> At the time of Mr. Emerson's trial and sentencing, I was unaware of the provision of I.C. 35–50–2–8(e), and I did not realize that he was eligible for the reduction. I did not argue for the reduction, nor did I present any evidence in support [of a reduction].

(R. at 120.)

We are unable to divine a cogent reason for failing to alert the trial court of this sentencing option, but nonetheless do not believe counsel was ineffective. The post-conviction court stated that "in light of the petitioner's lengthy criminal history, [it] could not conclude that the trial court might have reduced the petitioner's sentence enhancement under the habitual offender statute if a stronger argument had been made to do so." (R. at 109.) We presume that the trial court knows the law, and Emerson has not provided this Court with evidence demonstrating the contrary. Thus, having determined that Emerson failed to prove (1) the trial court was unaware of the ten year discretionary reduction to the habitual offender enhancement, and (2) the outcome would have been different had trial counsel informed the court of the available reduction, we affirm the post-conviction court and find Emerson suffered no prejudice from counsel's failure to bring the sentencing option to the attention of the trial court.

### A-2

 Emerson next alleges that trial counsel was ineffective for failing to object to the court's instructions on (1) battery and (2) prior unrelated felonies, and introduces in support of this claim the following testimony from trial counsel:

I believe the court's instructions on Battery ... erroneously informed the jury that they could find Emerson guilty of Battery, a class C felony if they found that the Battery resulted in serious bodily injury.... My failure to object to [this instruction] was not a strategic decision.

(R. at 120.)

The instruction on Battery, although broader than the charging information filed against Emerson, correctly stated the statutory definition of class C felony Battery. And for the reasons discussed in Part I, *supra*, we find that even if trial counsel's failure to object to the instruction constituted deficient performance, Emerson was not prejudiced thereby. Emerson did not receive ineffective assistance of trial counsel in this regard.

 With respect to trial counsel's failure to object to instructions given during the habitual offender phase of Emerson's trial, Emerson does not recite the allegedly erroneous instruction, nor cite to those portions of the record containing the relevant instructions, nor does he provide authority in direct support of his position. *See* Ind.Appellate Rule 8.3(A)(7) ("When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief[.]"). Emerson's failure to do so here waives our consideration of this claim.

### A-3

Emerson next contends that trial counsel was ineffective for failing to raise any of the issues discussed *supra* in a motion to correct errors. Again, Emerson has provided testimony from trial counsel:

I was also responsible for filing Mr. Emerson's Motion to Correct Error, and I neglected to include as errors (a) my failure to object to [the battery instruction and] (b) my failure to properly raise Mr. Emerson's eligibility for a sentence reduction[.]

(R. at 121.)

Because we otherwise find no ineffective assistance on the part of trial counsel, we cannot conclude that counsel was ineffective for failing to make these arguments in such a motion.

### A-4

Emerson's final ineffective assistance of trial counsel argument is that trial counsel's performance prejudiced Emerson before the jury. Prejudice resulting from counsel's deficient performance is one prong of the two prong test set forth in *Strickland* and applied by this Court. *See Lowery*, 640 N.E.2d at 1048. Because Emerson does not provide us with specific examples of trial counsel's alleged ineffectiveness other than those discussed in Parts III-A-1 to III-A-3, *supra*, and because we have determined that Emerson received effective assistance of counsel with regard to the claims he has raised, we find no resulting prejudice.

### B

 Emerson claims that appellate counsel (1) failed to preserve and argue all meritorious issues, specifically those issues which

Emerson claims trial counsel was ineffective for failing to raise; (2) prejudiced him with a deficient performance; and (3) was generally ineffective. We hold appellate counsel to the same standard of effectiveness as trial counsel. *Lowery*, 640 N.E.2d at 1048. And when, as here, a petitioner predicates a claim of ineffective assistance of appellate counsel on the alleged ineffectiveness of trial counsel, he or she must establish both deficient performance and resulting prejudice on the part of both trial and appellate counsel. The failure to establish either prong with respect to either trial or appellate counsel voids the claim. *See Roche*, 690 N.E.2d at 1120. Having already determined that Emerson did not receive ineffective assistance of trial counsel, we conclude that appellate counsel's performance was not deficient for failing to argue the ineffectiveness of trial counsel.

### Conclusion

For the foregoing reasons, we affirm the post-conviction court's denial of post-conviction relief.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.