Russell **LEWIS**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A05–0104–CR–157.

Court of Appeals of Indiana.

Nov. 21, 2001.

---

Janice L. Stevens, Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Russell Lewis was convicted following a jury trial of confinement, a Class B felony, and battery, a Class C felony. He was sentenced to a total of twenty years. He

now appeals his convictions and sentence. We affirm in part and reverse and remand in part.

### Issues

Lewis raises two issues for our review, which we restate as follows:

1. Whether the trial court properly instructed the jury regarding the elements of confinement; and

2. Whether the trial court properly sentenced Lewis.

### Facts and Procedural History

Christopher Moss and Naisha Goodner shared an apartment in Indianapolis. Goodner is Lewis' sister. On March 29, 1999, Moss and Goodner were in the process of moving out of their apartment when the apartment was burglarized. Several days later, Lewis, Peter Carter and Delwin Williams were at the apartment to help Moss with the move. By nightfall, the move was mostly complete, and the men were drinking and talking at the apartment. Lewis asked Williams if he knew anything about the burglary, and Williams denied any involvement. Lewis persisted in asking Williams if he knew anything about the burglary, and eventually became angry with Williams. The two fought. Moss and Williams testified at trial that Lewis hit Williams in the head repeatedly with a gun during the fight, although Lewis denied having a gun. Eventually, Williams told Lewis that Marvin Maxwell had broken into the apartment. Williams' face was bleeding after the altercation.

The four men went to Maxwell's aunt's apartment, which was in the same complex as Moss' apartment. Williams testified that he was forced by the three other men to go with them and that Lewis had a gun with him as they walked. Moss and Lewis both testified that Williams went with them voluntarily, and Lewis denied having a gun. When they arrived at Maxwell's

aunt's apartment, Maxwell answered the door. He joined the men outside, where he and Moss began to argue and then to fight. Williams ran from the scene. Maxwell was found murdered later that night.

Lewis was charged with murder, a felony, burglary, a Class A felony, and criminal confinement, a Class B felony, for the altercation with Maxwell, and with criminal confinement, a Class B felony, and battery, a Class C felony, for the altercation with Williams. The jury was unable to reach a verdict as to the counts involving Maxwell, but found Lewis guilty of the criminal confinement and battery of Williams. A mistrial was declared on the Maxwell counts, but judgment of conviction was entered on the Williams counts. Lewis was sentenced to twenty years for the criminal confinement conviction and eight years for the battery conviction, the sentences to be served concurrently. He now appeals his convictions and his sentence. Additional facts will be provided as necessary.

### Discussion and Decision

#### I. Jury Instructions

Lewis first contends that the trial court erred in instructing the jury regarding the elements necessary to convict him of the criminal confinement of Williams.

#### A. Standard of Review

■■■■ The well-settled standard by which we review challenges to jury instructions affords great deference to the trial court. *State v. Snyder*, 732 N.E.2d 1240, 1244 (Ind.Ct.App.2000). The manner of instructing the jury lies within the trial court's sound discretion. *Id.* Thus, the trial court's ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole

and in reference to each other; even an erroneous instruction will not be error if the instructions taken as a whole do not misstate the law or otherwise mislead the jury. *Womack v. State*, 738 N.E.2d 320, 325 (Ind.Ct.App.2000), *trans. denied.*

### B. Confinement Instruction

Lewis was charged, in part, as follows:

Count III

... Russell Lewis ... on or about March 31, 1999, while armed with [a] deadly weapon[ ], that is: [a] handgun[ ], did knowingly, by fraud, enticement, force or threat of force, remove Marvin Maxwell from one place to another, that is: forced Marvin Maxwell to walk from a residence at 9022 East 39th Place, Apartment # 1, to a residence at 3906 North Breen Drive, which resulted in serious bodily injury, that is: blunt force injuries of the body and head, and a gunshot wound to Marvin Maxwell;

Count IV

... Russell Lewis ... on or about March 31, 1999, while armed with a deadly weapon, that is: a handgun, did knowingly, by fraud, enticement, force, or threat of force, remove Delwin Williams from one place to another, that is: forced Delwin Williams to walk from a residence at 3906 North Breen Drive to a residence at 9022 East 39th Place, Apartment # 1....

Appellant's Appendix at 112–13.

The preliminary instructions read to the jury included the charging information for all counts of which Lewis was accused and also the following:

You are to consider all the instructions as a whole and are to regard each with the others given to you. Do not single out any certain sentence or any

individual point or instruction and ignore the others.

\* \* \*

The crime of Criminal Confinement is defined by law as follows:

### CRIMINAL CONFINEMENT

A person who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another; commits Criminal Confinement, a Class D felony. However the offense is a Class B Felony if it is committed while armed with a deadly weapon or results in serious bodily injury to another person.

To convict the defendant of Criminal Confinement under Counts III and IV, the State must prove the following elements:

1. The defendant
2. knowingly
3. removed another person by fraud, enticement, force, or threat of force, from one place to another.

If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, then you may find the defendant guilty of Criminal Confinement, a Class D Felony.

If the State further proves beyond a reasonable doubt an additional element that the offense was committed while armed with a deadly weapon or resulted in serious bodily injury to another person, then you may find the defendant guilty of Criminal Confinement, a Class B Felony.

Appellant's Appendix at 129, 135. The final instructions included the following:

The Court in its Preliminary Instructions which will not be re-read to you, has instructed you as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the evidence received. The Preliminary Instructions should be considered by you along with the following Final Instructions in arriving at your verdict in this case.

You will be given a copy of the Preliminary and Final Instructions during your deliberations. Keep in mind it is impractical to embody all applicable law in any one instruction, so in considering any one instruction, you should construe it in connection with, and in light of, every other instruction given.

Appellant's Appendix at 161. The final instructions also included the definitions of "deadly weapon," "handgun," "bodily injury," and "serious bodily injury." Appellant's Appendix at 166–67, 170–71.

■ Lewis contends that the trial court's instruction regarding the statutory definition and elements of criminal confinement was in error.[1] His specific complaint is that he was charged with confinement as a Class B felony against Williams for using a deadly weapon, but the instruction would allow him to be convicted of confinement as a Class B felony for causing Williams serious bodily injury. Thus, he contends that the instruction allowed the jury to convict him of a crime with which he was not charged.

Lewis cites *Kelly v. State*, 535 N.E.2d 140 (Ind.1989) in support of his position. That case, however, does not compel the result that he seeks. In *Kelly*, the defen-

dant was charged with knowingly confining the victim without his consent and while armed with a deadly weapon. Indiana Code section 35–42–3–3 defines criminal confinement as knowingly or intentionally confining another person without his consent *or* removing another person by fraud, enticement, force, or threat of force from one place to another. The trial court instructed the jury of this definition and that the State was required to prove, in part, that the defendant knowingly confined the victim *or* removed him from one place to another. The problem lay in the fact that although the information charged the defendant only with non-consensual confinement, the final instructions allowed conviction on either non-consensual confinement or confinement by removal, the jury returned a general verdict, and the evidence arguably could have supported a conviction of either confinement by removal or non-consensual confinement. *Id.* at 143. Thus, the defendant's conviction was reversed and he was granted a new trial.

The primary difference between this case and *Kelly* is that herein, Lewis was charged with two counts of confinement: one against Williams by using a deadly weapon, and one against Maxwell by causing serious bodily injury. The trial court instructed the jury on the charges against Lewis and then instructed the jury regarding each of the elements of confinement relevant to the charges, as opposed to *Kelly*, in which the trial court instructed the jury on an element which was completely foreign to the charge against the defendant.

---

1. The transcript does not include a discussion regarding the jury instructions, and so we cannot ascertain for ourselves that Lewis objected to this instruction and preserved any error. The State alleges that no objection was made, but does not provide a citation to the record to support this assertion. Because it does not ultimately make a difference in our determination, we will assume that an objection was made and the error properly preserved.

In *Emerson v. State,* 695 N.E.2d 912 (Ind.1998), which Lewis also cites, our supreme court held that although the trial court's instruction on battery exceeded the scope of the charge against the defendant, the error was harmless and did not warrant post-conviction relief. The defendant was charged with Class C felony battery for striking, stabbing and cutting the victim by means of deadly weapons, namely sticks and a knife. The trial court instructed the jury that Class C felony battery is committed by knowingly or intentionally touching another person in a rude, insolent, or angry manner resulting in serious bodily injury or by means of a deadly weapon. Our supreme court noted that although the instruction did in fact exceed the scope of the charge and although the State presented evidence which would support the uncharged crime, the State also presented sufficient evidence to prove that the defendant committed the charged crime, and the trial court properly instructed the jury as a whole, including an instruction which laid out the charge of battery against the defendant, and an instruction to consider all instructions together. Accordingly, our supreme court found no fundamental error. *Id.* at 916–17.

■ As in *Emerson,* the trial court herein instructed the jury on the specific charges filed against Lewis as to each victim, and as in *Emerson,* there was evidence presented which would support the charged crime. Based upon the charges filed, it was necessary for the trial court to instruct the jury as to criminal confinement elevated to a Class B felony based upon both use of a deadly weapon and causing serious bodily injury, and therefore, it would not be entirely correct to say that the trial court's instruction defining criminal confinement was overly broad, although it perhaps could have been worded more specifically. However, even if the instruction was too broad, the other instructions, including the instruction quoting the charging information, and several instructions that the State was required to prove each essential element of the crime charged, cured any error. Lewis points out that unlike *Emerson,* there was an evidentiary dispute as to whether a handgun was used in the confinement of Williams: Williams testified that Lewis had a gun, but Lewis denied that allegation [2]—whereas there was no dispute that Williams was bleeding following the altercation. Thus, he argues that the jury could have believed that he did not have a gun but nevertheless believed that he caused Williams serious bodily injury. However, the State clearly presented evidence from which the jury could determine that Lewis was armed with a gun while confining Williams, and therefore, we will presume the jury followed the instructions it was given that the State was required to prove each element of the charge.

As noted in *Emerson,* "[t]here is no prejudicial error if the jury is instructed expressly on the charge against the defendant, and the State offers evidence to prove that charge." *Id.* at 916 (citing *Evans v. State,* 571 N.E.2d 1231, 1235 (Ind. 1991)). Such is the case here. The jury instructions as a whole did not mislead the jury as to the law and accordingly, there is no error.

## II. Sentencing

Lewis also contends that the trial court erred in sentencing him because the court allowed Maxwell's mother to testify, despite the fact that Lewis had not been

---

**2.** In *Emerson,* the defendant did not dispute that the victim testified that a tree limb had been used in the commission of the crime, nor did he dispute the characterization of a tree limb as a "deadly weapon." 695 N.E.2d at 916.

found guilty of any crime against Maxwell, and because the trial court considered improper aggravating circumstances in enhancing Lewis' sentence.

### A. Standard of Review

■■ Sentencing decisions lie within the sound discretion of the trial court. *O'Connell v. State,* 742 N.E.2d 943, 951 (Ind.2001). This discretion extends to the decision to enhance a sentence. *Id.* This court will reverse only upon a manifest abuse of that discretion. *Catt v. State,* 749 N.E.2d 633, 641 (Ind.Ct.App.2001). If the sentence is authorized by statute, it will not be revised or set aside, unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.;* Ind. Appellate Rule 7(B).

### B. Maxwell's Murder as an Aggravating Circumstance

Lewis was convicted of a Class B felony and a Class C felony. The presumptive sentence for a Class B felony is ten years, with not more than ten years added for aggravating circumstances, and not more than four years subtracted for mitigating circumstances. Ind.Code § 35–50–2–5. The trial court sentenced Lewis to the maximum sentence of twenty years for his Class B felony conviction. The presumptive sentence for a Class C felony is four years, with not more than four years added for aggravating circumstances and not more than two years subtracted for mitigating circumstances. Ind.Code § 35–50–2–6. The trial court sentenced Lewis to the maximum sentence of eight years for his Class C felony conviction. The sentences were ordered to be served concurrently.

Lewis first contends that the trial court erred in allowing Maxwell's mother to testify at his sentencing hearing, since he was not found guilty of any counts relating to Maxwell. Moreover, Lewis contends that the trial court erred in considering the alleged crimes against Maxwell as an aggravating circumstance supporting his enhanced sentences. We agree.

■■ At Lewis' sentencing hearing, the State called Maxwell's mother to the stand. Lewis objected on the basis of relevance. The State responded as follows:

> [T]he State's position is the jury did not find [Lewis] guilty of the actual homicide of [ ] Maxwell, they hung on that, they did not acquit him. However, the facts of this case . . ., there's no dispute in my opinion that the conduct of [Lewis] in confining [ ] Williams led, in fact, to, as a factual matter, to the death of Ms. Maxwell's son. The jury dealt with a legal causation, but the fact is, had he not participated in confining [ ] Williams at gunpoint and forcing him to give information where [Ms. Maxwell's] son was, her son as a factual matter would not be dead. . . .

Transcript at 322. The trial court overruled Lewis' objection and allowed Ms. Maxwell to testify. She testified that she understood that her son was not the victim of the crimes of which Lewis was convicted, but that she had been at the trial and understood that her son's death was the result of Lewis' conduct. She then testified that she misses her son and that his death has been and continues to be hard on her. She also testified that she did not feel twenty-eight years, the maximum possible sentence for Lewis' convictions, is "long enough." Transcript at 324. The State made the following statement to the court following the testimony:

> [T]he State's arguing as an aggravating factor that [ ] Maxwell died, but to be clear, I'm not asking the Court to take that into a legal consideration and imply [Lewis is] guilty of that charge. But for

the conduct as I said a moment ago, [Ms. Maxwell's] son wouldn't be dead regardless of whether the jury found him legally culpable.... This was extraordinarily violent crime of two victims and the crime occurring across the span of an apartment complex. It started at one location, one apartment, it dragged, they dragged [ ] Williams to a second apartment where [ ] Maxwell was found ... then [he] was taken back to the first apartment where the photographs ... show the brutality of the death that [ ] Maxwell suffered. Again, [Lewis] has not been held legally culpable for that, but that was, in fact, I would argue beyond dispute, the end result of the actions that were initiated by [Lewis].

Transcript at 325–26. The Court then sentenced Lewis as follows:

You don't have a prior felony conviction, although as an aggravating circumstance I find that you do have a prior criminal history; a theft as a juvenile, a visiting a common nuisance in 1997, carrying a handgun without a license. So there is some indication from the handgun without a license case that you understand is kind of a problem, that the criminal history seems to be increasing in intensity and potentially violent. In this situation it turned out to be extraordinarily violent. In this case you not only confined but beat this young man in order to find out information about another burglary that had taken place in an act of vigilante justice.... Saying that you're sorry to the Maxwell family really doesn't do a whole lot, and no matter how many years I give you it's certainly not going to make up for what's been done to them. They will suffer with this for the rest of their lives. So with respect to the Criminal Confinement the Court will impose the maximum of twenty years; finding as aggravating circumstances that out-

weigh the mitigating circumstances that I have already indicated, that you do have a criminal history, seems to be increasing in seriousness which resulted in this, a prior handgun offense. This crime was particularly heinous, substantially beat up the victim in order to elicit information, which ultimately led to you and your friends participating in his death. The Court will impose twenty years on the B Felony, eight years on the Class C Felony. I will order the sentences to be served concurrently.

Transcript at 328–30.

The fact that Maxwell was murdered is an inappropriate aggravating circumstance for several reasons. First, Maxwell was not a "victim" of the crimes for which Lewis was being sentenced, and therefore, Ms. Maxwell's testimony was irrelevant to the appropriate sentence for his crimes against Williams. Indiana Code section 35–38–1–8.5 provides that as part of the presentence investigation, the probation officer "shall prepare a victim impact statement for inclusion in the convicted person's presentence report. The victim impact statement consists of information about each victim and the consequences suffered by a victim or a victim's family as a result of *the crime*." Ind.Code § 35–38–1–8.5(c) (emphasis added). Indiana Code section 35–38–1–7.1 requires the court to consider "any oral or written statement made by a victim of *the crime*" in determining what sentence to impose. Ind. Code § 35–38–1–7.1(a)(7) (emphasis added). The crimes under consideration herein are the battery and confinement of Williams. Therefore, the "victim" of "the crime" is Williams. Ms. Maxwell's testimony was irrelevant to these proceedings, and Lewis' objection to her testimony should have been sustained.

 Moreover, even if we could consider Ms. Maxwell's testimony as properly given, she did not testify to any particular impact beyond that which one would expect a family member of a murder victim to experience. Generally, the impact that a victim or a family experiences as a result of a particular offense is accounted for in the presumptive sentence. *Simmons v. State*, 746 N.E.2d 81, 91 (Ind. Ct.App.2001), *trans. denied.* Therefore, under normal circumstances, the impact upon a victim or a victim's family is not an aggravating circumstance for purposes of sentencing. *Bacher v. State*, 686 N.E.2d 791, 801 (Ind.1997). "In order to validly use victim impact evidence to enhance a presumptive sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime." *Davenport v. State*, 689 N.E.2d 1226, 1233 (Ind.1997), *clarified on reh'g on other grounds.* Because Ms. Maxwell testified only to the fact that she missed her son and that his death has been hard on her, the same impact one would expect upon a family member of any murder victim, her testimony should not have been considered as an aggravating circumstance in any event.

 The error in allowing Ms. Maxwell to testify was further compounded when the trial court obviously relied upon the fact and circumstances of Maxwell's death, as evidenced by the court's sentencing statement. The jury did not find Lewis guilty of any crimes against Maxwell. It is true that the jury did not acquit Lewis, they were merely unable to reach a verdict on the crimes against Maxwell. Lewis will be retried on those counts, and if he is found guilty at that time, then the circumstances surrounding Maxwell's death would be properly considered in sentencing him for those charges. But for the charges against Lewis having to do with his conduct toward Williams, the only charges of which Lewis was found guilty, the death of Maxwell is an inappropriate aggravating circumstance. *See Fugate v. State*, 516 N.E.2d 75, 79–80 (Ind.Ct.App. 1987) (defendant who was convicted of burglary and theft but acquitted of arson was improperly sentenced when the trial court's sentencing statement relied upon a presentence report which erroneously assumed that defendant was guilty of the arson and included a victim impact statement regarding damage from the arson).

### C. Criminal History as an Aggravating Circumstance

Lewis also contends that the trial court erred in finding his prior criminal history as an aggravating circumstance. Specifically, he contends that the trial court erred in relying on juvenile adjudications.

 A trial court may treat a defendant's juvenile record as an aggravating circumstance if the presentence investigation report contains specifics as to juvenile criminal activity and those specifics support evidence of a history of criminal activity. *Davenport*, 689 N.E.2d at 1232. *See also Day v. State*, 560 N.E.2d 641, 643 (Ind.1990) ("When a juvenile proceeding ends without a disposition, the mere fact that a petition was filed alleging delinquency does not suffice as proof of a criminal history. Indeed, even when a juvenile court has made a determination of delinquency, only the acts committed by the juvenile may constitute a criminal history to support enhancement of a sentence."). In this case, the presentence investigation report indicates that Lewis was adjudicated a delinquent in 1995 for committing what would have been theft if committed by an adult. However, the report indicates that "[a] narrative report for this case could not be located." Appellant's Appendix at 191. Lewis' remaining juvenile record consists of offenses for which

no action was taken or which were dismissed. *Id.* Without more information regarding Lewis' juvenile adjudication, it was inappropriate for the trial court to consider Lewis' juvenile record in determining that he had a prior criminal history which supported an enhanced sentence.

### D. Lewis' Sentence as a Whole

Disregarding the facts and circumstances of Maxwell's death and Lewis' juvenile record, we are left with the following aggravating and mitigating factors cited by the trial court: Lewis' young age and lack of a prior felony conviction in mitigation, and his adult criminal history in aggravation. His criminal history consists of a Class B misdemeanor conviction for visiting a common nuisance and a Class A misdemeanor conviction for carrying a handgun without a license.

■■■■■ "The trial judge is responsible for determining the appropriate weight of aggravating and mitigating factors in sentencing." *Powell v. State,* 751 N.E.2d 311, 315 (Ind.Ct.App.2001) (quoting *Hurt v. State,* 657 N.E.2d 112, 115 (Ind.1995)). A single proper aggravating factor is sufficient to support an enhanced sentence. *Craig v. State,* 737 N.E.2d 442, 445 (Ind. Ct.App.2000). Even where the trial court considers improper aggravators in imposing a sentence, the sentence will be affirmed if it is otherwise supported by a legitimate aggravator. *Powell,* 751 N.E.2d at 315.

■■■■■ However, Article 7, Section 6 of the Indiana Constitution charges this court with the responsibility to review and revise sentences "to the extent provided by rule." Indiana Appellate Rule 7(B) in turn provides as follows:

> The Court shall not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

A sentence is manifestly unreasonable when it is clearly, plainly and obviously so. *Evans v. State,* 725 N.E.2d 850, 851 (Ind. 2000). Inasmuch as the sentencing process is inherently subjective, this court will not substitute its own judgment for that of the trial court. *Hurt,* 657 N.E.2d at 114.

■■■■ The trial court's sentencing statement indicated a reliance upon the fact that Lewis helped set in motion the events which eventually led to Maxwell's death. However, we have determined that was inappropriate. Thus, the proper considerations were two misdemeanor convictions versus Lewis' young age and lack of prior felony convictions. We cannot say that the trial court would necessarily weigh those proper factors against each other the same way it weighed the improper factors. The maximum sentence for Lewis' first felony convictions strikes us as manifestly unreasonable. Therefore, we believe remand for the trial court to re-sentence Lewis based upon only proper considerations is the appropriate remedy in this case.

### Conclusion

Considering the jury instructions and the charges against Lewis as a whole, the trial court properly instructed the jury regarding the elements of criminal confinement. However, the trial court improperly considered certain factors in making its sentencing determination, and therefore, we reverse Lewis' sentence and remand for a sentencing hearing consistent with this opinion.

Affirmed in part, reversed and remanded in part.

BAKER, J., and FRIEDLANDER, J., concur.