Joseph HENDERSON, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee.**

**No. 49A05–0301–CR–37.**

Court of Appeals of Indiana.

Sept. 11, 2003.

Rehearing Denied Oct. 22, 2003.

---

Janice L. Stevens, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Joseph Henderson appeals from his convictions for two counts of murder and two counts of robbery. He presents two issues for our review: whether the trial court erred in instructing the jury on self-defense, and whether the trial court erred in denying Henderson's request to instruct the jury on theft.

We affirm.

During the evening of October 14, 1998, Henderson and Mario,[1] who was Henderson's marijuana supplier, went to the home of Jermaine Miller, to whom Henderson had agreed to sell $2,400 worth of marijuana. Waiting at Miller's home were Miller's girlfriend and three other male individuals, William Clark, Ricky Harris, and Darrell Odom. Henderson informed them that he did not have the marijuana with him and that he wanted to make sure that Miller had the money. They all counted the $2,400 and Henderson asked if he could take it and go get the marijuana. Miller, Harris, and Odom refused so Henderson agreed to bring it by later that evening. Henderson later called and said that he had to throw the marijuana out because he had been pulled over by the police.

The following day Henderson went to dinner with his mother. On the way home, he saw Brett Dorsey, Andrea Itce, and Ashley Curtis at the home of Ashley's ex-boyfriend. Henderson's mother dropped him off there. Henderson approached Dorsey and, while whispering in

---

1. In the testimony "Mario" is referred to only by the single name.

his ear, asked him if he wanted to make $500. Henderson told Dorsey that he needed a driver.

The four got into Dorsey's car and stopped by Henderson's mother's home, where Henderson had been staying for a couple of weeks. Henderson went inside and put on a hooded sweatshirt. They then went to Dorsey's house where they watched TV. While there, Henderson took out the handgun which he was carrying and cleaned it.[2] To clean it, he put on rubber gloves and wiped down the gun, the clip, and the bullets with a paper towel.

Henderson received a page and called the designated number. Henderson told Dorsey that he had spoken to the people he needed to meet and asked Dorsey to drive him to a local Shell gas station. After arriving at the Shell station, Henderson approached Miller and Odom, who was driving the other car, and told them that they needed to get rid of the other passenger in the car because he wanted to deal on a one-to-one basis. Henderson and Dorsey then returned to Dorsey's apartment while Odom and Miller took the other passenger home. Miller and Odom then paged Henderson and Henderson and Dorsey left to meet them at a McClure gas station.

At the gas station, Henderson spoke with Miller and Odom and then they left to go to a different location. Miller and Odom followed Dorsey's car to the back of an industrial complex that Henderson had discussed earlier with Dorsey, Andrea, and Ashley. Both Dorsey and Odom backed their cars up to a building. Henderson exited Dorsey's vehicle and walked around to the passenger side of Odom's car. Miller got out and Henderson climbed into the backseat. Miller then got back into the car and Henderson asked to see the money

so that he could count it. Miller refused to let him count it; rather, he counted it himself. Henderson then exited the vehicle and returned to Dorsey's car. He reached into the backseat and retrieved a black bag which belonged to Dorsey. He removed the handgun from his waistband and placed it into the bag and returned to Odom's car. Once Henderson was in the backseat, Dorsey saw Odom turn toward Henderson and make some movements. Henderson then pulled out the handgun and shot Odom in the head. Henderson then shot Miller twice in the head. As he exited the car, Henderson took approximately $600 which he stated was lying on the ground outside of the car. Henderson jumped into Dorsey's car and they left the scene. They first returned to Dorsey's apartment and then took Andrea and Ashley over to Mario's home where Dorsey purchased marijuana for the group to smoke.

Henderson was subsequently charged with six counts, two counts of murder for the killing of Miller and Odom, two counts of felony murder for causing the deaths of Miller and Odom while committing robbery, and two counts for the robbery of Miller and Odom. At his first trial, the jury returned a guilty verdict to the charge of murder of Miller but could not reach a verdict on the other charges and the trial court declared a mistrial on the remaining charges. He received a sentence of 65 years for his conviction, with five years suspended. Henderson sought an appeal of his conviction to our Supreme Court, which had jurisdiction of his appeal at that time. However, he then requested a stay of his appeal pending resolution of the remaining charges against him. The appeal was dismissed without prejudice, and Henderson was granted leave to appeal the original murder conviction along with

---

**2.** The evidence established that the handgun belonged to Henderson's uncle.

any subsequent convictions in one consolidated appeal.

At the second trial, Henderson was charged with the remaining five counts and was found guilty of each one by the jury. The guilty verdicts for the felony murder of Odom and Miller were then dismissed by the trial court for reasons of double jeopardy. The trial court then sentenced Henderson to sixty years incarceration for the murder of Odom to be served concurrent to the sixty-year executed sentence for the murder of Miller. Henderson was also ordered to serve concurrent twenty-year sentences for the two robbery convictions. The sentences for the robbery convictions were ordered to be served consecutive to the sentences for both murders.

Henderson then sought to appeal his convictions from the second trial as well as his conviction from the first trial. The jurisdiction of our Supreme Court, as found in the Indiana Constitution, Article 7, Section 4, was changed by the voters in the general election on November 7, 2000. Consequently, this court was vested with jurisdiction over Henderson's second appeal and would have had jurisdiction over Henderson's first appeal had it been filed after January 1, 2001. Therefore, by order of our Supreme Court, this court was to assume jurisdiction of all matters relating to Henderson's appeal.

 Henderson first challenges the propriety of the self-defense instruction given to the jury by the trial court. The manner of instructing a jury is left to the sound discretion of the trial court. *Lewis v. State,* 759 N.E.2d 1077, 1080 (Ind.Ct. App.2001), *trans. denied.* The trial court's ruling will not be reversed unless the in-structional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole and in reference to each other; even an erroneous instruction will not be error if the instructions taken as a whole do not misstate the law or otherwise mislead the jury. *Id.* at 1080–81. Moreover, in determining whether a defendant suffered a due process violation based upon an incorrect jury instruction, we consider other relevant information given to the jury, including closing argument. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002), *reh'g denied; Isom v. State,* 651 N.E.2d 1151, 1153 (Ind. 1995).[3] In reviewing a trial court's decision to give or refuse tendered instructions, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Smith v. State,* 777 N.E.2d 32, 34 (Ind.Ct.App.2002), *trans. denied.*

In instructing the jury on self-defense at the first trial, the following instruction was used:

"The defense of self-defense is defined by law as follows:

A. A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony. No person in this state shall be placed in

---

**3.** Although argument of counsel is neither evidence nor conclusive as to the applicable law, the holding of our Supreme Court allows such argument to be considered as giving dimension and context to the case as submitted to the jury.

legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

A person is not justified in using force if:

1. He is committing, or is escaping after the commission of, a crime;

2. He provokes unlawful action by another person with intent to cause bodily injury to the other person; ...

The State has the burden of disproving this defense beyond a reasonable doubt." Appendix at 196.

Henderson had tendered an instruction similar to that given by the trial court. The difference in the two instructions is that the one which Henderson tendered to the trial court contained only the first full paragraph of the above instruction and did not contain any reference to the restrictions on the use of force if someone is or was involved in the commission of a crime or has provoked the other party's actions.

█ Henderson now asserts that the instruction as given was erroneous and that if his tendered instruction was not given, the jury should have been instructed that the criminal activity which would preclude the use of self-defense must have produced the confrontation where the force was employed.[4] The State asserts that Henderson cannot complain about the instruction because his tendered instruction did not include any information in regard to what he now alleges is erroneous. However, Henderson need not have tendered an instruction in order to have preserved his claim of instructional error. In *Scisney v. State*, 701 N.E.2d 847, 849 (Ind. 1998), our Supreme Court determined that an alternative instruction is not necessarily required to preserve a claim of error when

an objection is made which clearly identifies both the claimed objectionable matter and the grounds for the objection. In this case, Henderson objected to the trial court's instruction, gave the grounds upon which the objection was based, and cited to *Harvey v. State*, 652 N.E.2d 876 (Ind.Ct. App.1995), to support his contention. Henderson's objection was sufficient to preserve the error for appeal.

In *Harvey*, this court determined that the statute providing for the defense of self-defense precludes its use where it is sought by one who was actively engaged in the perpetration of a crime and that the criminal activity produced the confrontation wherein the force was employed. *Id.* at 877. In *Harvey*, the defendant, who did not have a license to carry a handgun, had shot and killed another individual. The trial court instructed the jury as follows, "A person who is not in his home or fixed place of business and is carrying a handgun without a license cannot by law claim the protection of the law of self defense." *Id.* at 876. In ruling upon Henderson's objection, the trial court concluded that *Harvey* was not controlling because in *Harvey* the court held that defendant was entitled to a self defense instruction because the crime in which he was engaged was a passive possession and there was no nexus between that offense and the shooting of the murder victim. Unlike *Harvey*, the drug dealing activity in which Henderson was involved was the cause for the individuals being armed which resulted in the shooting.

Since the time of *Harvey*, and after Henderson's first trial, our Supreme Court has had the opportunity to address when and how a jury must be instructed on self-defense. In *Mayes v. State*, 744 N.E.2d

---

4. At the first trial, Henderson focused upon the crime of dealing in marijuana while the State focused upon both the dealing and the charged robberies as the crimes out of which the confrontation arose.

390 (Ind.2001), the Court was faced with a situation in which the defendant, who was having an argument with his girlfriend, retrieved his jacket from the house. A handgun was in one of the pockets. The defendant stated that as he and his girlfriend argued in the street, she reached for her purse, and fearing that she had a handgun, he drew his own weapon and fired. The girlfriend died as a result of five gunshot wounds to the chest, shoulder, arm, and back.

The *Mayes* Court determined that in order for a defendant to be prevented from utilizing a self-defense claim, there must be an immediate causal connection between the crime and the confrontation. *Id.* at 394. Expressing that result differently, our Supreme Court stated that "the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred." *Id.* The Supreme Court then determined that the evidence could be interpreted in various ways, some of which would have precluded the use of self-defense. *Id.* Ultimately, it determined that the jury, as fact-finder in that case, should determine whether there was an immediate causal connection between the defendant's possession of an unlicensed handgun and the victim's death and that it could not be determined by the court as a matter of law. *Id.* Nonetheless, our Supreme Court did not find error in the trial court failing to instruct the jury on the causal connection requirement. *Id.* at 394–95.

The instruction given by the trial court in *Mayes* was similar to that given here. Both instructions, insofar as pertinent, correctly specified pursuant to the statute, that self-defense was not applicable if the accused "is committing a crime." I.C. § 35–41–3–2. In *Mayes*, because the instruction mirrored the statute, our Supreme Court determined that it was a correct statement of the law.

In a concurring opinion joined by Justice Dickson, Justice Boehm wrote that he did not agree that a naked recitation of the statutory language was a correct statement of "the law." *Mayes*, 744 N.E.2d at 396. His reasoning was that the statute, as noted by the majority, would preclude the use of self-defense claims in all situations in which the defendant was involved in a crime, but that case law had made clear that not everyone involved in a crime is deprived of the defense of self-defense. *Id.*

Justice Boehm also took exception to the majority's determination that the conviction be affirmed through the reasoning that the jury could have concluded that there was a causal connection between the illegal conduct and the confrontation with the victim. *Id.* Because the jury was not instructed that a finding of a causal connection between the illegal activity and the confrontation was required, Justice Boehm opined that there was no basis to conclude that the jury made such a finding. *Id.*

Finally, Justice Boehm expressed his concern that the majority's use of a "but for" test was too broad. *Id.* As he noted, "[t]here are many situations where 'but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred,' but where the defense of self-defense should be available." *Id.*

■ Turning to the issue in this case, the instruction given was a correct statement of the law as was determined by our Supreme Court in *Mayes*. Nonetheless, in line with the reasoning of the concurring opinion in *Mayes*, the instruction as given was an *incomplete* statement of the law because it did not explain to the jury that

a causal connection between the crime and the confrontation was necessary in order to preclude a finding of self-defense. Had the trial court amended the instruction to include the suggestion of Henderson as stated in his objection, the instruction would have still been correct and would have been a more complete statement of the law.[5]

■ Per our Supreme Court's conclusion in *Mayes* that it is ultimately left to the jury as fact-finder to determine whether there is an immediate causal connection between the crime and the confrontation, it would appear that the jury should have been so instructed in this case. This is especially true given that the alternative theories exist that: (1) the killings were caused by an attempted drug deal or robbery that went wrong, or (2) Henderson acted in self-defense when Odom and Miller tried to rob him. However, the failure to instruct the jury does not require reversal because the instructions as a whole did not mislead the jury as Henderson claims.

In reaching this conclusion, we need only to review the statement of defense counsel during closing argument. After quoting a portion of the instruction and discussing the evidence which indicated that Henderson was attempting to sell marijuana, counsel stated:

"You read that and it may be confusing, because the State wants you to believe that the fact that he's there for a pot deal means that he can't claim self-defense. That's not the law, and that makes no sense. If that were the case, if I hadn't paid my taxes, I'm commit-

ting a felony by not paying my taxes. And that's an ongoing offense, and that means I can't claim self-defense under any circumstances. If I'm in possession of marijuana and somebody jumps me and I shoot them, I can't claim self-defense because I've got a joint in my pocket. That's not what the legislature intended by this statute. What that statute intends and what is reasonable and common sense says is that, if I jump somebody, maybe I pull a knife on them, and they either start whooping me back or they pull a gun on me, I can't then claim self-defense when I stabbed them, or I pull a gun when they're beating me . . . up." Transcript at 918–19.

While the substance of this statement was not included in an instruction as Henderson had requested, the information sought to be included in the instruction was adequately explained to the jury. While the instruction given to the jury may not have included a complete statement of the law, counsel's remarks were sufficient to dilute or dispel a concern that the jury would have been misled by the instructions.

Henderson also claims that the trial court erred in instructing the jury on self-defense at the second trial. The instruction given to the jury was nearly identical to that given to the jury during the first trial, with the main exception being that the exclusion regarding the unlawful provocation of another was omitted. However, while the instruction given to the jury was much the same, the crime upon which the parties focused for the purpose of arguing whether Henderson could make a claim of

---

**5.** An issue which is left for another day is how broadly one should interpret the "but for" test as established by the majority in *Mayes*. If the test is to be interpreted as broadly as Justice Boehm indicates the majority has written it, it would appear that self-defense would not be applicable in this case because "but for Henderson attempting to sell marijuana to Miller, there would have been no confrontation and no killing."

self-defense was the crime of robbery as alleged in the charging information.

■ At the second trial, the jury found that Henderson committed two acts of robbery as charged. There can be little dispute that killing someone during the commission of robbery prevents the perpetrator from being able to successfully assert that he acted in self-defense. To commit robbery, the perpetrator must use or threaten the use of force on the victim or put the victim in fear. *See* Ind.Code § 35–42–5–1 (Burns Code Ed. Repl.1998). By its very nature, robbery is a crime which precludes the use of self-defense if the killing occurs during the commission of a robbery. *See Rouster v. State,* 705 N.E.2d 999, 1006 (Ind.1999) (stating that a defendant is barred from asserting self-defense when the jury found that he was engaged in robbery at the time of the killings). Therefore, if there were no errors which would have precluded the jury from returning verdicts of guilty to the charges of robbery, Henderson has not been prejudiced by the failure to instruct the jury on the casual connection requirement between the crime and the confrontation for the purpose of application of the law of self-defense. *See Smith v. State,* 777 N.E.2d 32, 37 (Ind.Ct.App.2002) (stating that failure to give an instruction does not necessarily warrant reversal and that we must assess whether the defendant was prejudiced by the failure), *trans. denied.* Consequently, we turn to Henderson's final claim of error, that the trial court erred in denying his tendered instruction on theft as an included offense of robbery.

■ When a defendant requests an included offense instruction, the trial court must apply a three-part analysis: (1) determine whether the lesser-included offense is included in the crime charged; if fense is included in the crime charged; if not, (2) determine whether the lesser-included offense is factually included in the crime charged; and if either, (3) determine whether a serious evidentiary dispute exists whereby the jury could determine that the lesser offense was committed but the greater was not. *Hauk v. State,* 729 N.E.2d 994, 998 (Ind.2000). Theft is an inherently included offense of robbery. *Id.* If a trial court makes a finding as to the existence or lack of a "serious evidentiary dispute," we review the decision whether to instruct the jury on included offenses for an abuse of discretion in deference to the trial court's proximity to the evidence. *McEwen v. State,* 695 N.E.2d 79, 84 (Ind.1998).

■ Henderson's claim upon appeal is that the trial court erred in denying his instruction on theft because the jury could have concluded that he did not commit a robbery, but rather, that after he shot Miller and Odom in self-defense, he took money from the car and that would be considered only a theft. He asserts that a serious evidentiary dispute existed and that the trial court was required to give the instruction. Further, he asserts that *his* testimony established the evidence that he was attacked by Odom and acted in self-defense thereafter, and only then did he take the money.

The State counters by arguing that the trial court found that no serious evidentiary dispute existed. To support its contention, the State relies upon the trial court's comments in response to Henderson's claim that "[i]f the shooting was unrelated to the fact [that money was taken], it was a theft." Transcript at 1457. The trial court responded, "I think there's some evidence to indicate that that might not have been true, and that would be a burden on the jury to prove [sic] that. So I will not

be giving the lesser included offense. I don't believe there was any evidence to indicate that...." Transcript at 1457. We agree with the State that the trial court was making an explicit finding that the evidence did not support Henderson's view that a theft was committed but a robbery was not.[6]

Additionally noted by the State is the fact that Henderson did not testify at the second trial. Because Henderson did not testify, he could not have established the evidence which would give rise to a serious evidentiary dispute as he claims. From our review of the record, we have found nothing which would indicate that the trial court abused its discretion in determining that no serious evidentiary dispute existed, nor has Henderson directed this court to any such evidence. Because no serious evidentiary dispute existed that Henderson only committed a theft but that he did not commit a robbery, the trial court did not err in denying Henderson's request to instruct the jury on theft.

Returning to the issue of instructing the jury on self-defense, Henderson cannot show that he has been prejudiced by the trial court's refusal to give an amended jury instruction. The fact is that the jury found that Henderson committed a robbery. Through such finding, the jury has determined that Henderson committed an act which precludes his argument that he acted in self-defense because the attack was causally connected to the commission of the robbery. Therefore, Henderson would not have been prejudiced had the trial court given no instruction on self-defense, let alone an instruction which correctly, though incompletely, stated the law.

The judgment is affirmed.

FRIEDLANDER and RILEY, JJ., concur.

---

6. Henderson claims that the trial court's statement indicated that it was acknowledging the State's contrary evidence and that the issue was for the jury to decide, but that it then concluded that there was no evidence. Henderson asserts that the first statement from the court was correct and that the jury should decide the evidence. While the first remark does seem to indicate that there may have been some evidence to support Henderson's position, the trial court then immediately found that there was not.