Gregory FOSTER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–0206–CR–183.

Court of Appeals of Indiana.

Sept. 17, 2003.

Eugene C. Hollander, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General, of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Defendant, Gregory Foster (Foster), appeals his convictions for rape, a Class A felony, Ind.Code § 35–42–4–1; criminal deviate conduct, a Class A felony,

I.C. § 35–42–4–2; and criminal confinement, a Class B felony, I.C. § 35–42–3–3.

We affirm.

## ISSUES

Foster raises three issues on appeal, which we restate as follows:

1. Whether the trial court committed reversible error when it instructed the jury that the sole and uncorroborated testimony of the alleged victim, if believed beyond a reasonable doubt, was sufficient to support a conviction;

2. Whether the trial court properly denied Foster's motions for discharge pursuant to Indiana Criminal Rule 4; and

3. Whether his 150–year sentence was proper.[1]

## FACTS AND PROCEDURAL HISTORY

On November 18, 2000, at approximately 3:00 a.m., S.J. was walking from her apartment to visit a friend. S.J. lived in the Eden Green Apartments in Fort Wayne, Indiana. As S.J. walked down the street, Foster drove by in a white Toyota Camry, and called out the name "Diane," thinking that S.J. was her aunt.[2] S.J. informed Foster that she was not Diane and told him her first name. Foster offered S.J. a ride because it was late at night and she was walking alone. S.J. accepted the ride and entered the car. Once S.J. entered the car, Foster drove in the opposite direction of S.J.'s intended destination.

As a result, S.J. informed Foster that he was going in the wrong direction. Foster told S.J. that he had to take care of some business first and encouraged her to calm down. At this point, S.J. became worried, but she was not scared. However, S.J. asked Foster several times to stop in order to let her out of the car. Foster ignored her requests and continued to drive to the Canterbury Green Apartments, on the other side of town. Foster parked in a carport and left the car for about five minutes. S.J. testified that she remained in the car for the following reasons: (1) it was late, (2) she did not know the area, (3) it was dark, and (4) mostly white people, who she did not think would help her, inhabited the Canterbury Green Apartments.

When Foster reentered the car, he placed a black handgun on the dashboard and drove to Shoaff Park located in Fort Wayne, Allen County, Indiana. After seeing the handgun, S.J. was scared, and she began to cry. Again, S.J. informed Foster that she wanted to go home. Foster told S.J. to shut up. Then, Foster parked the car in a dark area of Shoaff Park surrounded by trees. He ordered that S.J. perform oral sex on him. When Foster threatened to use the handgun, S.J. performed oral sex on him as he requested. Afterwards, Foster instructed S.J. to pull her pants off and sit back in her seat. When S.J. complied, Foster lay on top of her, and engaged in sexual intercourse with her. S.J. testified that she cried and asked Foster to stop, but that he just told her to shut up and stop crying. Foster ejaculated on S.J.'s thigh and ordered her out of the car. S.J. testified that she refused to exit the car because she thought Foster would kill her if she exited the car.

1. On July 19, 2002, our supreme court amended Appellate Rule 7(B) effective January 1, 2003. The rule is directed to the reviewing court and sets forth the standard for that review. That review is made as of the date the decision or opinion is handed down. Accordingly, although the sentence here was imposed prior to January 1, 2003, our review has taken place as of this date and the "inappropriate" test is therefore applied.

2. Diane is S.J.'s aunt. The record reveals that the two look alike and are often mistaken for one another.

When S.J. refused to exit the car, Foster drove her back to her apartment. As Foster drove away, S.J. remembered the license plate number of the car Foster was driving.

As S.J. stood outside, she saw Fort Wayne Police Officer James King (Officer King) in a store parking lot. S.J. approached Officer King and told him that she had been raped. S.J. was hysterical and Officer King calmed her down before taking her statement. S.J. provided Officer King with a description of her attacker, and a description of the car he was driving with the license plate number. Officer King contacted the medics for S.J. S.J. was taken to the Sexual Assault Treatment Center and examined by Nurse Stephanie Good (Nurse Good). Nurse Good completed a rape kit for S.J. S.J. reported that her upper arms were tender. There were also fresh bruises on her lower extremities. In the meantime, Officer King ran the license plate number provided by S.J. and discovered that the car was registered to Shirley Foster, Foster's mother. S.J. later identified Foster from a photo array.

Indiana State Police DNA Analyst, Mary Reed (Reed), performed a DNA analysis on several of the samples from S.J.'s rape kit. The swab taken from S.J.'s left thigh was consistent with Foster's DNA. Reed testified that one African–American in fifty-eight billion would match the DNA found on S.J.'s left thigh and external genitalia. The vaginal and cervical swabs were consistent with S.J., Foster, and an unknown third contributor.[3] The swab taken from S.J.'s right groin area was also consistent with both S.J. and Foster.

On November 21, 2000, Fort Wayne Detective Hilda Williams (Detective Williams) interviewed Foster. Detective Williams testified that, at first, Foster denied that he picked up a girl during the early hours of November 18, 2000. However, Detective Williams testified that Foster later claimed that he picked up a girl, on November 18, 2000, and drove her one block up the street, but that no sexual contact occurred.

On February 16, 2001, the State of Indiana filed a three-count information, charging Foster with Count I, rape, a Class A felony; Count II, criminal deviate conduct, a Class A felony; and Count III, criminal confinement, a Class B felony. On March 5, 2001, a warrant was issued for Foster's arrest. Foster was arrested pursuant to the warrant on March 7, 2001. On March 9, 2001, the trial court held Foster's initial hearing. On April 25, 2001, the State filed an additional information alleging that Foster was a habitual offender, I.C. § 35–50–2–8.

On April 30, 2001, Foster requested a speedy trial pursuant to Crim. R. 4(B). On the same date, the trial court granted Foster's Motion for Speedy Trial and set the trial for June 19–20, 2001. On June 8, 2001, the State requested a continuance due to the unavailability of a necessary and material witness. On June 12, 2001, a hearing was held. At this hearing, the trial court found that the State's witness would be available within ninety (90) days, and granted the State's Motion for Continuance pursuant to Crim. R. 4(D). At this point, Foster's counsel objected to the continuance. As a result, Foster fired his attorney and withdrew the objection to the continuance because Foster wanted to hire a new attorney. The trial court scheduled

**3.** S.J. testified that on the night of November 17, 2000, she and her boyfriend had sexual intercourse.

a hearing for trial setting and attorney status for June 26, 2001.

At the June 26, 2001 hearing, Foster had not yet hired a new attorney. Therefore, Foster asked for the matter to be "postponed" so he could try to hire an attorney. The trial court scheduled a trial setting and attorney status hearing for July 11, 2001. On July 11, 2001, Foster appeared with a new attorney. The trial date was set for November 6–7, 2001. Foster's new attorney informed the trial court that Foster might renew his request for speedy trial after a review of discovery material, but was not doing so at that time. Foster made no objection to the November trial date. On November 6, 2001, the trial court continued the trial due to a congested court calendar. The trial court set the trial for February 12–13, 2002. Foster objected to the new trial date on the basis that his speedy trial rights were violated. The trial court informed Foster that he waived his speedy trial rights when he fired his attorney on June 12, 2001, and withdrew his objection to the State's motion for continuance. On November 26, 2001, due to an irretrievable breakdown in the attorney-client relationship, Foster's attorney withdrew from the case. At a status hearing on November 30, 2001, new counsel appeared for Foster. The trial date of February 12–13, 2002, was also confirmed.

On December 5, 2001, Foster filed a Motion for Bond Reduction, Release under Crim. R. 4(A), or Discharge under Crim. R. 4(B), and a Motion for Speedy Trial. On December 10, 2001, the trial court denied the Motion for Bond Reduction, Release or Discharge. However, the trial court granted Foster's Motion for Speedy Trial and confirmed the February 12–13, 2002 trial date. Nevertheless, on February 12, 2002, the trial court continued the trial due to a congested court calendar and

set the trial for April 23–24, 2002. Foster objected and renewed his motion for discharge. The trial court denied Foster's renewed motion for discharge.

A jury trial was held on April 23–24, 2002. On April 24, 2002, during a hearing held outside of the presence of the jury regarding final instructions, Foster objected to the State's tendered final instruction providing that a conviction can rest on the uncorroborated testimony of the victim, if believed beyond a reasonable doubt. The trial court gave the instruction over Foster's objection. On the same date, the jury found Foster guilty of rape, criminal deviate conduct, and criminal confinement. The jury also determined that Foster was a habitual offender.

On May 20, 2002, a sentencing hearing was held. The trial court sentenced Foster to the Indiana Department of Correction for a period of fifty (50) years on Count I, enhanced by a term of thirty (30) years due to his habitual offender status; fifty (50) years on Count II; and twenty (20) years on Count III, for an aggregate sentence of 150 years; each sentence to run consecutively to the others.

Foster now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Final Instruction 12

Foster contends that the trial court erred by giving Final Instruction 12. Specifically, Foster argues that Final Instruction 12 states that a conviction can be based on the uncorroborated testimony of the alleged victim and, therefore, is erroneous according to *Ludy v. State,* 784 N.E.2d 459 (Ind.2003). Foster maintains that the trial court violated his substantial rights by giving Final Instruction 12 over his objection because Jackson's testimony was uncorroborated. Conversely, while

the State concedes that it was error for the trial court to give Final Instruction 12, the State argues that giving the instruction was harmless error because other evidence corroborated Jackson's testimony. We agree.

■ Final Instruction 12 specifically states:

The sole and uncorroborated testimony of the alleged victim, if believed beyond a reasonable doubt, is sufficient to support a conviction.

Appellant's App. at 170. The well-settled standard by which we review challenges to jury instructions affords great deference to the trial court. *Lewis v. State*, 759 N.E.2d 1077, 1080 (Ind.Ct.App.2001). The manner of instructing the jury lies within the trial court's sound discretion. *Id.* Thus, the trial court's ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.*

Our supreme court addressed this very issue in the aforementioned *Ludy* case. In *Ludy*, our supreme court held that giving a jury instruction stating that a conviction can be based on the uncorroborated testimony of the alleged victim was error. *Ludy*, 784 N.E.2d at 462. The supreme court reasoned that this instruction was problematic because it unfairly focused the jury's attention on and highlighted a single witness's testimony; it presented a concept used in appellate review that was irrelevant to a jury's function as fact-finder; and juries could be misled or confused by the technical term "uncorroborated." *Id.* at 461. The supreme court further reasoned that such an instruction invited

the jury to violate its obligation to consider all the evidence. *Id.* at 462.

■ In the instant case, the trial court jury's primary function was to determine beyond a reasonable doubt that Foster committed the charged offenses. *See id.* at 461. Due to the jury's primary function, the jury must consider all the evidence presented at trial. *See id.* Accordingly, we find that the trial court erred when it gave Final Instruction 12.[4]

However, an instruction error will result in reversal when the reviewing court "cannot say with complete confidence" that a reasonable jury would have rendered a guilty verdict had the instruction not been given. *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind.2001). This court disregards an error that does not affect the substantial rights of a party. *Ludy*, 784 N.E.2d at 461–62.

■ Here, we find that the jury would have [most likely] rendered a guilty verdict absent the use of the erroneous instruction, *i.e.* Final Instruction 12. Specifically, the record reveals that S.J. gave an accurate description of the car Foster was driving and positively identified Foster from a photo array. Further, a check on the license plate number, provided by S.J. immediately following the ordeal, revealed that the car was registered to Foster's mother, who testified that she allowed her son to use the car at times. The record also shows that the DNA analyses of the swabs taken from S.J.'s thigh and external genitalia were consistent with Foster. Reed, a DNA analyst for the Indiana State Police Laboratory in Lowell, Indiana, testified that only one in fifty-eight billion African–Americans would match the DNA from the swabs taken from S.J. S.J.'s physical injuries were also consistent with

4. Our supreme court stated that this new rule "applies to *Ludy* and others whose cases properly preserved the issue and whose cases are now pending on direct appeal." *Id.* For this reason, the new rule is applicable to the instant case.

being raped. Based on the foregoing, it is clear that S.J.'s testimony was corroborated. While Final Instruction 12 may have been misleading under *Ludy*, the error does not require reversal because, given all the evidence, the jury most likely would have properly convicted Foster absent the erroneous instruction. *See Dill*, 741 N.E.2d at 1232. As a result, we find that it was harmless error for the trial court to give Final Instruction 12. *See id.*

## II. *Indiana Criminal Rule 4*

Next, Foster maintains that the trial court erred by failing to grant his December 5, 2001 Motion for Discharge and his February 12, 2002 Motion for Discharge. Specifically, Foster argues that the trial court erred because he was not brought to trial within seventy (70) days of his motions for speedy trial as required by Ind. Crim. R. 4(B)(1).

 Crim. R. 4(B)(1) states, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . .

We note that, while Crim. R. 4(B)(1) expressly requires that a defendant be discharged if not brought to trial within certain prescribed time limits, the rule contains specific exceptions for court congestion and other exigent circumstances that may justify reasonable delay beyond the seventy-day period. *See Clark v.*

*State*, 659 N.E.2d 548, 551 (Ind.1995); *Stephenson v. State*, 742 N.E.2d 463, 488 (Ind.2001) (The trial court may set a trial date beyond this prescribed time when there is a continuance or delay by the defendant, court congestion, or an emergency).

 However, a defendant must maintain a position reasonably consistent with his request for a speedy trial and must object, at his earliest opportunity, to a trial setting that is beyond the seventy-day time period. *Hill v. State*, 777 N.E.2d 795, 797–98 (Ind.Ct.App.2002). The requirement that a defendant object to a trial date set after the seventy-day deadline and move for discharge facilitates compliance by trial courts with the speedy trial requirement. *Id.* at 798. Thus, once a trial date is set beyond the limits set forth in Crim. R. 4, the defendant must file a timely objection to the trial date or waive his right to a speedy trial. *Id.* Accordingly, the defendant's failure to object timely will be deemed acquiescence in the setting of that date. *Id.*

 In the present case, we find ample support for the trial court's denial of Foster's December 5, 2001 Motion for Discharge, and his February 12, 2002 Motion for Discharge. Our review of the record reveals that, on April 30, 2001, Foster requested a speedy trial. The trial court granted the motion and set the trial for June 19–20, 2001, a date within the prescribed time limit of Crim. R. 4(B)(1). The record also reveals that, on June 8, 2001, the State requested a continuance because of the absence of a necessary and material witness. At the June 12, 2001 hearing, the trial court found that the State's witness would be available within ninety (90) days. Therefore, the trial court granted the State's Motion for Continuance pursuant

to Crim. R. 4(D).[5] At this time, Foster's attorney objected to the State's Motion for Continuance. However, Foster fired his attorney and withdrew his objection to the State's Motion for Continuance. Foster wanted time to hire a new attorney. By firing his attorney and withdrawing his objection to the continuance, Foster failed to maintain a position reasonably consistent with his request for a speedy trial. *See Hill*, 777 N.E.2d at 797–98; *Sholar v. State*, 626 N.E.2d 547, 549 (Ind.Ct.App. 1993). Thus, we find that Foster abandoned his request for a speedy trial. *Id.*

■■■ Furthermore, the record shows that, as of the June 26, 2001 hearing, Foster had not hired a new attorney. Foster asked the trial court to have the matter "postponed" in order to provide him with additional time to hire an attorney. (June 26, 2001 Hearing Tr. pp. 4–5). The trial court granted Foster's request and set a status conference for July 11, 2001. On July 11, 2001, Foster appeared with counsel. The trial was set for November 6–7, 2001. Foster did not object to this trial date at this hearing. As a result, we find that Foster's failure to timely object to the November 6–7, 2001 trial date was his acquiescence in the setting of that date and a waiver of his right to a speedy trial. *See Hill*, 777 N.E.2d at 798. Additionally, we find that the setting of the trial date by the trial court was proper because much of the delay in proceeding to trial was attributable to Foster's actions concerning his legal representation. *See Stephenson*, 742 N.E.2d at 488; Crim. R. 4(B)(1).

■■■ However, on July 27, 2001, the trial court conducted a bond reduction hearing. At this hearing, Foster orally renewed his motion for speedy trial. The trial court set the matter for hearing on August 20, 2001. On August 20, 2001, Foster untimely objected to the November 6–7, 2001 trial date and renewed his request for speedy trial. As shown above, the trial court properly ruled that Foster waived his request for a speedy trial on June 12, 2001, when he withdrew his objection to the State's Motion for Continuance. Moreover, the record reflects that, on July 11, 2001, Foster did not object to the trial date of November 6–7, 2001. Because Foster's renewed motion for a speedy trial, on July 27, 2001, was made after his acquiescence to the November 6–7, 2001 trial date, it is our determination that the motion was untimely, and, thus, properly denied by the trial court. *See Hill*, 777 N.E.2d at 798.

■■■ Additionally, on November 6, 2001, the trial court continued the trial due to a congested court calendar. Foster objected to the trial court's continuance. However, the trial court reset the trial for February 12–13, 2002, over Foster's objection. Nonetheless, on December 5, 2001, Foster filed a Motion for Bond Reduction, Release under Crim. R. 4(A), or Discharge under Crim. R. 4(B).[6] Foster also filed a Motion for Speedy Trial. On December 10, 2001, a hearing was held. The trial court granted Foster's Motion for Speedy Trial and confirmed the February 12–13, 2001 trial date. However, the trial court denied the Motion for Bond Reduction,

---

**5.** Crim. R. 4(D) states, in pertinent part, as follows:

> If when application is made for discharge of a defendant under this rule, the court [is] satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same

and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued....

**6.** Crim. R. 4(A) provides for release on a defendant's own recognizance. *See* Crim. R. 4(A)

Release, or Discharge because of Foster's conduct in firing his attorney and withdrawing his objection to the State's Motion for Continuance at the June 12, 2001 hearing.

 The trial court also denied Foster's Motion for Bond Reduction, Release, or Discharge due to a congested court calendar. Upon appellate review, a trial court's finding of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court. *Clark,* 659 N.E.2d at 552. Under Crim. R. 4(B)(1), a court may, on its own motion, continue a trial date due to a congested court calendar. Our review of the record reveals that the trial court was presiding over the trial of *State of Indiana v. Larry Smith,* Cause No. 02D04–0103–CF–100. (*See* November 6, 2001 Hearing Tr. p. 4). Therefore, the delay was reasonable under the circumstances. *See Clark,* 659 N.E.2d at 551; *Sholar,* 626 N.E.2d at 549. Thus, we find that the trial court properly denied Foster's December 5, 2001 Motion for Discharge.

The record also reveals that, on February 12, 2002, the trial court continued the trial due to a congested court calendar, and set the trial for April 23–24, 2002. Foster objected to the trial court's continuance and orally renewed his motion for discharge. The record shows that the trial court was presiding over the trial of *State of Indiana v. Carlos Davis,* Cause No. 02D04–0104–CF–165. (*See* February 12, 2002 Hearing Tr. p. 3). As a result, the delay was reasonable under the circumstances and it was proper for the trial court to find a congested court calendar. *See Sholar;* Crim. R. 4(B)(1). Accordingly, we find that the trial court properly denied Foster's February 12, 2002 Motion for Discharge.

### III. *Sentencing*

 It is well established that sentencing decisions lie within the discretion of the trial court and are governed by I.C. § 35–38–1–7.1. *Henderson v. State,* 769 N.E.2d 172, 179 (Ind.2002); *Rodriguez v. State,* 785 N.E.2d 1169, 1179 (Ind.Ct.App. 2003) *trans. denied.* This court will review a trial court's sentencing decision only for an abuse of discretion, including the trial court's decision to increase or decrease the presumptive sentence because of aggravating or mitigating factors and to run the sentences concurrently or consecutively. *Id.* If the trial court relies upon aggravating or mitigating factors to enhance or reduce a presumptive sentence, it must: (1) identify all significant mitigating and aggravating factors; (2) state the specific reason why each factor is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the factors. *Henderson,* 769 N.E.2d at 179. A single aggravating circumstance can justify the enhancement of a sentence. *Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002); *Williams v. State,* 782 N.E.2d 1039, 1051 (Ind.Ct.App.2003). Therefore, we examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the enhanced sentence. *Kien v. State,* 782 N.E.2d 398, 411 (Ind.Ct.App. 2003).

After considering the Pre–Sentence Investigation (PSI) report and all of the evidence presented, the trial court imposed the following sentence:

> ... Having been found guilty following a trial by jury you're now here for sentencing. Court having considered and reviewed the written Pre–Sentence Investigation Report and having heard the arguments of counsel, your own comments, those of the victim, as well as

having presided and heard the evidence at the jury trial, which was completed on April 24th of 2002, the Court now finds the Defendant guilty of Count I, Rape, a Class A Felony; Count II, Criminal Devi[ate] Conduct, a Class A Felony; Count III, Criminal Confinement, a Class B Felony. The Court further finds the Defendant is an Habitual Offender as charged and proved by the State. Court does find aggravating circumstances with your juvenile and adult criminal record. Juvenile record consisting of five adjudications as a delinquent outlined in the Pre–Sentence Investigation Report as being a Shoplifting, Rape and Battery in 1980; Shoplifting in 1983 and then Burglary in 1984. Your adult criminal record consists of a Misdemeanor Possession of Marijuana in 1986; a felony Robbery in 1987; Misdemeanor Public Intoxication in 1995; a felony Criminal Recklessness in 1996; further aggravator is that you were discharged from parole on that last felony conviction on October 9th of 2000 and committed these offenses November 18th of 2000. Prior efforts at rehabilitation have failed, Mr. Foster. You've been through not only the juvenile system wherein you were placed on probation, given suspended commitment to boys' school, been in the adult system as well where you've been given lesser sentence and placed on probation in the hopes that you would rehabilitate yourself and you failed to do so. In addition, you've been placed on probation and petitions to revoke that probation were filed. In 1997 you were returned to probation in 1997 and again, a petition for revocation of your probation was filed February 18th of 1997 leading to a revocation of that probation and a commitment to the Department of Correction[ ]. Your attorney has requested a minimum executed sentence which this Court finds as an aggravator would in fact depreciate the seriousness of the offenses with which you have been convicted. Have to say, Mr. Foster, I would have to agree with the State of Indiana that it's never been your fault. Ever. In looking at the Pre–Sentence Investigation Report in an attempt to find some mitigating circumstances on your behalf, you've never been employed, you withdrew from high school, you were employed for a very brief period of time in 1995. You indicated to the PSI writer that was your only employment and that your mother has always provided for you. I don't believe Mr. Foster that anyone has done you any great favors by letting you become the person that you are. You've used drugs on a daily basis or every other day and you drink and you've had no responsibility ever. I have been unable, Mr. Foster, to identify any minimal or significant mitigating circumstances in your case. The State has labeled you as a pred[a]tor, Mr. Foster, you are a pred[a]tor. Court finds lack of mitigators that the substantial aggravating circumstances as outlined by this Court, any one of which are enough to justify an enhanced sentence, it's therefore ordered that the Defendant be committed to the Indiana Department of Correction[ ] for classification and confinement for a period of 50 years on Count I, said count[ ] ordered enhanced by a term of 30 years as an Habitual Offender for a net sentence on Count I of 80 years. Court orders a commitment to the Department of Correction[ ] for classification and confinement for a period of 50 years on Count II, consecutive to Count I and a commitment for 20 years on Count III, consecutive to Count II. Court finds that the imposition of a consecutive sentence is necessary and is justified by the aggravators, as well as

the fact that all crimes that the Defendant has been convicted of are crimes of violence as outlined in the statute.... (Sentencing Hearing Tr. pp. 22–26).

### A. Imposition of an Enhanced Sentence

#### 1. Aggravating Circumstances

Foster argues that he was improperly sentenced. Specifically, Foster contends that the trial court used the following improper aggravating circumstances to enhance his sentence: (1) the circumstance that imposing a reduced sentence would have depreciated the seriousness of the crime, and (2) the finding that Foster was a predator. Thus, Foster maintains that the trial court abused its discretion in sentencing him.

#### a. Imposition of a Reduced Sentence Depreciates the Seriousness of the Crime

Foster argues that the trial court improperly determined as an aggravating circumstance that the imposition of a reduced sentence would depreciate the seriousness of the crime as an aggravating factor. Specifically, Foster asserts that there is nothing in the sentencing statement indicating that the trial court considered imposing less than the presumptive sentence and, therefore, reliance on this aggravating circumstance was improper.

 It is improper for a trial court to find as an aggravating circumstance that the imposition of a reduced sentence would depreciate the seriousness of the crime unless the trial court is considering imposing a sentence of shorter duration than the presumptive. *Price v. State*, 725 N.E.2d 82, 85 (Ind.2000); *Garrett v. State*, 714 N.E.2d 618, 622 (Ind.1999). Here, the trial court reiterated that Foster's attorney requested a minimum executed sentence. Specifically, the trial court noted: "Your attorney has requested a minimum executed sentence which this Court finds as an aggravator would in fact depreciate the seriousness of the offenses with which you have been convicted." (Sentencing Hearing Tr. p. 24). However, the trial court never considered imposing a sentence less than the presumptive. Accordingly, we find that the trial court improperly used the fact that the imposition of a reduced sentence would depreciate the seriousness of the crime as an aggravating circumstance because the trial court never considered imposing a sentence lower than the presumptive. *See id.*

#### b. Determination that Foster was a Predator

 Next, Foster argues that the trial court erred when it determined that he was a predator, and used that factor as an aggravator. Specifically, Foster maintains the trial court improperly relied on the finding that Foster was a predator as an aggravating circumstance.

At the sentencing hearing, the trial court stated: "The State has labeled you as a pred[a]tor, Mr. Foster, you are a pred[a]tor." (Sentencing Hearing Tr. p. 25). As previously stated, a trial court must state the specific reason why each circumstance is aggravating. *See Henderson*, 769 N.E.2d at 179. Here, the trial court failed to state why Foster was a predator. Accordingly, we find that the trial court improperly relied upon the determination that Foster was a predator as an aggravating circumstance. *See id.*

 Nonetheless, despite a trial court's use of an improper aggravating circumstance to enhance a sentence, this court will affirm if other aggravating circumstances are adequate to support the enhanced sentence. *Watson v. State*, 784 N.E.2d 515, 523 (Ind.Ct.App.2003). In addition to the crimes for which Foster was convicted, the trial court properly consid-

ered several aggravating circumstances to impose the enhanced sentence. Here, the record indicates that Foster has an extensive juvenile record. Foster also has an extensive adult record. In fact, the record reflects that Foster was given several opportunities to rehabilitate himself. Foster was placed on probation as a juvenile and an adult. Moreover, Foster has never been employed, he has failed to graduate from high school, and he has a history of drug and alcohol abuse. We note that a single aggravator is sufficient to support an enhanced sentence. *Powell,* 751 N.E.2d at 315. Therefore, we find that the trial court properly enhanced Foster's sentence. *See* I.C. § 35–38–1–7.1(a), (b) and (d).

### 2. Mitigating Factors

■ The trial court was not required to find any mitigating circumstances. *See Rodriguez,* 785 N.E.2d at 1178. Our review of the trial court's comments at the sentencing hearing reveals that the trial court clearly engaged in the evaluative process necessary to justify an enhanced sentence. *See Kien,* 782 N.E.2d at 411. In particular, the record shows that the trial court attempted to find some mitigating circumstances by looking at the PSI report. The trial court was unable to find any mitigating circumstances. Moreover, Foster does not dispute any of the valid aggravating factors found by the trial court, nor does he assert any mitigating factors that were overlooked. *See Rodriguez,* 785 N.E.2d at 1178–79. As a result, we find that the trial court properly enhanced Foster's sentence. *See* I.C. § 35–38–1–7.1(a), (b), and (d).

■ With the above in mind, we find that the trial court did not abuse its discretion when sentencing Foster. Here, Foster was sentenced to fifty years for Count I, Rape, a Class A felony. This sentence was enhanced by thirty years due to Foster's habitual offender status. *See* I.C. § 35–50–2–8. Foster was also sentenced to fifty years for Count II, Criminal Deviate Conduct, a Class A felony, and twenty years for Count III, Criminal Confinement, a Class B felony. Thus, the trial court sentenced Foster to the maximum sentence of one hundred and fifty (150) years for his convictions; each sentence to run consecutively to the others. The trial court articulated several valid aggravating circumstances and found no mitigating circumstances. Therefore, the trial court did not abuse its discretion when it imposed the maximum, consecutive sentence. *See Henderson,* 769 N.E.2d at 179.

■ Nevertheless, Foster maintains that the trial court failed to support its imposition of the maximum, consecutive sentence. We disagree.

■ A trial court may not impose consecutive sentences without express statutory authority. *Newsome v. State,* 654 N.E.2d 11, 14 (Ind.Ct.App.1995). Such authority is provided by I.C. § 35–50–1–2(a)(7)(8), which states, in pertinent part, a "crime of violence" means rape and criminal deviate conduct. In addition, under I.C. § 35–38–1–7.1(b) and (e), the court *may consider* the following factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted to the person.

(2) The person has a history of criminal or delinquent activity.

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by commitment of the person to a penal facility.

(4) Imposition of a reduced sentence or suspension of the sentence and imposi-

tion of probation would depreciate the seriousness of the crime.

. . .

(8) The person committed a sex crime as listed in subsection (e)

. . .

(e) For the purposes of this article, the following crimes are considered sex crimes:
(1) Rape (I.C.35–42–4–1).
(2) Criminal deviate conduct (I.C.35–42–4–2).

(emphasis added).

Any one of the above-cited factors may be used as an aggravator or to support imposing a consecutive sentence. Here, the trial court stated that Foster has extensive juvenile and adult criminal records. *See* I.C. § 35–38–1–7.1(b)(2); *Walker,* 758 N.E.2d at 567. The trial court stated that Foster had violated the terms of probation on two prior occasions. *See* I.C. § 35–38–1–7.1(b)(1). The trial court also noted that Foster had only been released for parole six weeks before he violated the terms of parole by committing the present offenses. *See id.* Additionally, the trial court stated that it ran Foster's sentences consecutively due to the fact that the instant crimes are "crimes of violence" as defined by I.C. § 35–50–1–2(a)(7)(8). Therefore, the trial court's imposition of the maximum, consecutive sentence is clearly supported by the record. Thus, the trial court did not abuse its discretion when sentencing Foster.

### B. *Inappropriate Sentence*

■ Foster also contends that his sentence was inappropriate in light of the nature of his offenses and his character. Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. A sentence that is authorized by statute will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Rodriguez,* 785 N.E.2d at 1179. As discussed above, when considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Watson,* 784 N.E.2d at 521. Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to Ind.Code § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Hildebrandt v. State,* 770 N.E.2d 355, 361 (Ind.Ct.App.2002) *trans. denied.*

■ Sentences at the extremes of the lawful range are more often (but not always) inappropriate. *See id.* at 360. Additionally, our supreme court has determined that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan v. State,* 767 N.E.2d 967, 973 (Ind.2002). In determining the appropriateness of a sentence in light of the "very worst offense and offender" argument, we must concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on the nature, extent, and depravity of the offense for which the defendant was sentenced, and what it reveals about the defendant's character. *Watson v. State,* 776 N.E.2d 914, 922 (Ind.Ct.App.2002).

■ As for the "nature of the offense" in this case, Foster used a gun to frighten a woman stuck in a car with him so he could rape her and force her to perform oral sex on him. As for the "character of the offender," Foster has an extensive ju-

venile and adult criminal history that includes violent crimes. Foster also used drugs and alcohol regularly and has never accepted responsibility for his actions. We are mindful of the principle that "the maximum sentence permitted by law should be reserved for the very worst offenses and offenders." *See Buchanan*, 767 N.E.2d at 973. Based on the aforementioned aggravating factors properly found by the trial court, we find that Foster falls into this category. As a result, we find that the one hundred and fifty (150) year consecutive sentence was appropriate in light of the nature of the offenses Foster committed and Foster's character. *See* App. R. 7(B).

## CONCLUSION

Based on the foregoing, we find that Final Instruction 12 was harmless error. We also find that the trial court properly denied Foster's motions for discharge. Finally, we conclude that Foster's one hundred and fifty (150) year consecutive sentence was appropriate in light of the nature of the offenses he committed and his character.

Affirmed.

SHARPNACK and BARNES, JJ., concur.