**Darvous CLAY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0706–CR–521.

Court of Appeals of Indiana.

March 20, 2008.

Richard Walker, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Darvous Clay appeals his thirty-two-year sentence for Burglary,[1] a class A felony. Specifically, Clay argues that (1) the provision of his plea agreement waiving his right to directly appeal his sentence is unenforceable, and (2) his sentence is inappropriate. We find the provision of the plea agreement in which Clay waived his right to directly appeal his sentence to be unenforceable because of the lack of evidence showing that Clay understood that he was waiving that right when he entered into the plea agreement. However, we do not find Clay's sentence to be inappropriate and, thus, affirm the judgment of the trial court.

## *FACTS*

During the night of July 16, 1997, Clay broke into a Madison County residence and awakened eight-year-old K.B. by putting a gun in her face. Clay placed a towel over K.B.'s head and told her that he would kill her if she did not remain silent. Clay removed K.B.'s underpants and K.B. "suffered bodily injury to her groin area." Tr. p. 26. Clay left through the bedroom window and K.B. ran to her mother's bed-

---

1. Ind.Code § 35–43–2–1.

room and reported the incident. K.B.'s mother took her to the hospital, where a rape kit was administered. DNA evidence from the rape examination was submitted to a DNA database in June 2003.

In April 2004, the database positively identified Clay as the perpetrator from the incident with K.B. The State charged Clay with class A felony burglary and class A felony child molesting on September 30, 2004. Clay pleaded guilty to class A felony burglary on February 19, 2007, and the State agreed to dismiss the class A felony child molesting charge. The plea agreement provided that "[a]t the time of sentencing, [Clay's] sentence will be left to the discretion of the trial court, except for a thirty-five (35) year cap on any executed portion. In addition, [Clay] waives any right to challenge his sentence under Indiana Appellate Rule 7 or Indiana Code § 35-38-1-15." Appellant's App. p. 64. The trial court held a hearing on February 19, 2007, and accepted the plea agreement.

The trial court held a hearing on April 16, 2007, and Clay attempted to withdraw his guilty plea, claiming he was innocent. The trial court continued the hearing until April 27, 2007, at which time Clay informed the trial court that he did not wish to withdraw his guilty plea. The trial court held a sentencing hearing the same day and sentenced Clay to thirty-two years imprisonment. He now appeals.

## DISCUSSION AND DECISION

### I. Plea Agreement Waiver

■■■ Clay argues that the provision of his plea agreement waiving his right to appeal his sentence is unenforceable. Plea agreements "are in the nature of contracts

entered into between the defendant and the [S]tate." *Perez v. State*, 866 N.E.2d 817, 819 (Ind.Ct.App.2007), *trans. denied.* Specifically,

"a plea agreement is contractual in nature, binding the defendant, the [S]tate and the trial court. The prosecutor and the defendant are the contracting parties, and the trial court's role with respect to their agreement is described by statute: If the court accepts a plea agreement, it shall be bound by its terms."

*Id.* at 820 (quoting *Lee v. State*, 816 N.E.2d 35-38 (Ind.2004)).

Clay concedes that the sentence the trial court imposed was within the parameters of the plea agreement. However, he argues that the waiver provision in the plea agreement is unenforceable and, thus, he should be allowed to challenge his sentence on direct appeal.[2] We have previously held that a defendant may explicitly waive his right to directly appeal his sentence in a plea agreement. *Perez*, 866 N.E.2d at 820. However, in reaching this conclusion, we examined the record and concluded that the defendant had "agreed *both* in the written plea agreement *and in his colloquy with the court* that he was waiving his right to a direct appeal of his sentence as long as it was within the parameters of [the plea agreement]." *Id.* (emphases added).

While it is clear that Clay agreed in writing to waive his right to directly appeal his sentence, appellant's app. p. 63–65, there is no evidence in the record that the trial court confirmed his understanding of that provision during the colloquy it had with him before formally accepting the plea agreement. This is troubling because

---

2. While Clay directs us to *Majors v. State*, 568 N.E.2d 1065, 1067–68 (Ind.Ct.App.1991), for the proposition that the waiver provision is unenforceable, the *Majors* court addressed a plea agreement provision that waived the de-

fendant's right to seek post-conviction relief. Thus, when presented with this argument on direct appeal, our court has held that "we need not determine the vitality of the *Majors* rule." *Perez v. State*, 866 N.E.2d at 819.

Clay's attorney admitted that multiple drafts of the plea agreement had been circulated between the parties:

> I went to [Clay] with the original plea offer, I haven't rifled through my files to see what it was. He sent me back to [the prosecutor] with a counter plea offer. [The prosecutor] sent me back to Mr. Clay with a counter plea offer. Mr. Clay sent me back to [the prosecutor] with a count-counter plea offer. [The prosecutor] sent me back to Mr. Clay with a counter-counter-counter, I've lost track of my counters, plea offers.... [A]t one point I said, "Darvous, I've been over here three times, I'm bouncing back and forth between here and the Court house like a hockey puck."

Tr. p. 47.

*Perez* shows our court's penchant for allowing a defendant to waive his right to directly appeal his sentence only if we can confirm that he *understood* that he was, in fact, waiving that right by entering into the plea agreement. 866 N.E.2d at 820. In light of the extensive plea agreement negotiations between the parties in this case, the trial court should have confirmed that Clay understood that he was waiving his right to directly appeal his sentence by entering into the plea agreement. Because it did not, we find the challenged provision to be unenforceable.[3]

## II. Appropriateness

■ Clay challenges the appropriateness of his sentence. While he does not discuss the nature of the offense he committed, he argues that his mental health issues and the fact that he "has been found guilty of only two write-ups in the five (5) year period that he's been at the Department of Correction" reflect favorably on his character. Appellant's Br. p. 7.

A person who commits a class A felony shall be imprisoned for a fixed term of between twenty and fifty years, with the advisory sentence being thirty years. Ind. Code § 35–50–2–4. Pursuant to the terms of the plea agreement, the trial court had discretion to impose up to thirty-five years of imprisonment. It found Clay's criminal record and pattern of repeated behavior to be aggravating circumstances and his guilty plea, acceptance of responsibility, mental health history, and good behavior to be mitigating circumstances. Ultimately, the trial court sentenced Clay to thirty-two years imprisonment—three years less than the maximum sentence allowed by the plea agreement.

Pursuant to Indiana Appellate Rule 7(B), our court has the constitutional authority to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is "inappropriate in light of the nature of the offense and the character of the offender." We defer to the trial court during appropriateness review, *Stewart v. State*, 866 N.E.2d 858, 866 (Ind.Ct.App.2007), and we refrain from merely substituting our judgment for that of the trial court, *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind.Ct.App.2003). The burden is on the defendant to persuade us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

---

**3.** While Clay does not argue that the unenforceable waiver provision renders the entire plea agreement void, we note that our Supreme Court has cited well-established contract principles when analyzing an unenforceable provision's effect on a plea agreement. *See Lee v. State*, 816 N.E.2d 35, 39 (Ind.2004) (noting that "it is [ ] true that if a contract contains an illegal provision that can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract"). Because the unenforceable waiver provision in Clay's plea agreement can easily be eliminated without frustrating the purpose of the agreement, it does not render the entire plea agreement void and we turn to his appropriateness argument.

Regarding the nature of the offense, Clay broke into a house and used a weapon to awaken an eight-year-old child. He placed a towel over her face, removed her underpants, and injured her "in the groin area." Tr. p. 26. Therefore, we do not find the nature of the offense to aid Clay's argument that his sentence is inappropriate.

Turning to his character, Clay argues that his sentence is inappropriate because he suffers from mental illness and has displayed good behavior while incarcerated. We note that the trial court considered both of these factors to be mitigating circumstances during sentencing. While we encourage Clay to continue his good behavior and acknowledge his mental illness, these factors alone are not enough to render his sentence inappropriate. Clay's extensive criminal history spans seven pages of the record and, as an adult, he has been convicted of felony criminal recklessness, multiple counts of felony and misdemeanor possession of a handgun, driving while intoxicated, public intoxication, four counts of resisting law enforcement, criminal conversion, and criminal confinement. Appellant's App. p. 86–92. Additionally, Clay has violated probation numerous times, and he was on probation at the time of the instant offense. His repeated criminal behavior and disregard for the law shows Clay's less-than-admirable character and does not aid his inappropriateness argument. In sum, we do not find the nature of the offense or Clay's character to render his sentence inappropriate.

The judgment of the trial court is affirmed.

DARDEN, J., and BRADFORD, J., concur.