## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 23 2015, 9:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven W. Slater, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 23, 2015 <br><br> Court of Appeals Case No. <br> 92A05-1406-CR-263 <br><br> Appeal from the Whitley Circuit Court. <br> The Honorable James R. Heuer, Judge. <br> Cause No. 92C01-1401-FB-10 |

**Baker, Judge.**

[1] Steven Slater appeals his convictions for two counts of class C felony Burglary,[1] two counts of class C felony Theft,[2] and two counts of class B misdemeanor Criminal Mischief,[3] as well as the finding that he is an habitual offender. He argues that the trial court erred when it admitted certain testimony from one of his accomplices about their discussion while planning a burglary. Slater also argues that his sentence is inappropriate in light of the nature of his offenses and his character. Finding no error, we affirm.

## Facts

[2] In January 2014, Slater was living with his girlfriend, Haley Shultz, in an apartment close to Hosler's TV and Appliance Store (Hosler's) in Columbia City. Nathan Fugate lived in the apartment next to Slater. Occasionally, Chantal Bocskey, a friend of Fugate's, would stay in Fugate's apartment.

[3] On January 2, 2014, Slater, Fugate, Shultz, and Bocskey were looking for a way to make money. They drove to a gas station, where they attempted to break into two Pepsi machines. Slater and Fugate attempted to pry open a machine with a crowbar, but were unsuccessful.

[4] On January 5, 2014, the four successfully broke into a Pepsi machine in front of Krinder's Meat Processing. The two women remained in the car, while Fugate

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-43-4-2.

[3] I.C. § 35-43-1-2.

and Slater pried open the machine with crowbars. Once they opened the machine, they took the metal change box from within, removed the change, and cashed it in at a machine in a Walmart. They used the money to purchase cocaine, which they smoked together.

[5] The following day, January 6, 2014, all four drove to Clugston Senior Living Apartments, where a family friend of Fugate's was living. Fugate, who had a key to the building, entered the lobby with Slater. While Fugate visited his friend, Slater took a 37-inch television from the lobby, placed it in the car, and took it to his apartment. The television was broken, so Slater took it to Hosler's to have it repaired.

[6] On January 9, 2014, the four were again discussing ways to obtain money. When he testified at trial, Fugate stated that, during this discussion, Slater suggested that the four break into a jewelry store. Fugate further testified that he told Slater he was too scared to break into a jewelry store and that Slater then suggested that they break into Hosler's. Fugate testified that Slater told him that he had checked out the store and it did not have sensors or alarms. Slater objected at trial to this testimony regarding the jewelry store, arguing that it was inadmissible character evidence, but the trial court allowed it into evidence, ruling that it "was all part of the process of what they were going through." Tr. p. 312.

[7] After this discussion, the four drove a few blocks and picked up a brick. They parked near Hosler's, where Slater exited the car with the brick. Soon after, the

others heard a loud crashing sound when Slater threw the brick through the store's glass window. Slater grabbed a television and got back in the car. The four drove the television to Fort Wayne. There, Slater gave the television to a drug dealer in exchange for cocaine, which Slater, Fugate, and Bocskey smoked.

[8] Later that day, the owner of Hosler's arrived to open the store. When he discovered that the store had been broken into and that a television had been stolen, he immediately contacted the police, who began conducting an investigation.

[9] On January 26, 2014, the four were joined by Victoria Lowe, a friend of Fugate's. The group decided to, once again, break into Hosler's. Slater and Fugate walked to Hosler's with a brick, which Slater threw through a window. Fugate grabbed a sound bar from the store and he and Slater ran back towards the car. However, as they ran, Fugate thought he saw a police officer, dropped the sound bar, and ran back to his apartment. Slater picked up the sound bar and placed it in the car. Fugate eventually returned to the car, and the group drove to Fort Wayne, where Slater exchanged the sound bar for more cocaine and some money.

[10] That afternoon, police officers contacted the owner of Hosler's to tell him that the store had again been the target of a break in. They asked him if he had any idea who might have been the perpetrator of the break in. The owner told them that he thought it might be one of the individuals living in the apartment

complex adjacent to the store, and he mentioned that he suspected it might have been Fugate.

[11] Police officers went to Fugate's apartment, where they asked Fugate if he knew anything about the break in. While speaking with Fugate, the police officers discovered that Fugate appeared to be manufacturing methamphetamine. When he learned that he might be investigated for methamphetamine manufacturing, Fugate told the police officers that Slater had broken into Hosler's.

[12] On January 28, 2014, the State charged Slater with three counts of class C felony burglary, class D felony theft, and two counts of class B misdemeanor criminal mischief. On February 3, 2014, the State amended the information, alleging that Slater was an habitual offender. On April 17, 2014, the State amended the charging information to replace one class C felony burglary charge with a class D felony theft charge.

[13] On April 23, 2014, a jury found Slater guilty as charged. The jury also found that he was an habitual offender. On May 19, 2014, the trial court sentenced Slater to eight years for each burglary conviction, to three years for each theft conviction, and to 180 days for each criminal mischief conviction, all to be served concurrently. The trial court imposed an additional four-year sentence for the habitual offender finding, resulting in an aggregate sentence of twelve years. Slater now appeals.

# Discussion and Decision

## I. Admission of Evidence

[14] Slater argues that the trial court erred when it allowed Fugate's testimony regarding the jewelry store discussion into evidence. The admission of evidence at trial is a matter left to the discretion of the trial court. *Clark v. State*, 994 N.E.2d 252, 259-60 (Ind. 2013). We review these determinations for an abuse of that discretion, and will reverse only when the admission of evidence is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.* at 260.

[15] Slater argues that the trial court's decision to allow Fugate to testify that Slater suggested that they rob a jewelry store before they decided to break into Hosler's is impermissible character evidence that violates Indiana Evidence Rule 404(b). Rule 404(b) provides that evidence of prior bad acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Slater argues that the evidence was used to show that he had a propensity to commit the crimes charged. He also argues that the trial court should have excluded the evidence because its probative value was substantially outweighed by the danger of unfair prejudice under Indiana Evidence Rule 403.

[16] When ruling on Slater's objection to the evidence at issue, the trial court determined it was admissible because it "was all part of the process of what they were going through." Tr. p. 312. In other words, the trial court viewed the

discussion as intrinsic evidence. Rule 404(b) does not bar the admission of evidence of uncharged acts that are "intrinsic" to the charged offense. *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997). Other acts are "intrinsic" if they occur at the same time and under the same circumstances as the crimes charged. *Wages v. State*, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007). Evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted. *Id.*

[17] Here, Fugate's testimony regarding Slater's suggestion that they rob the jewelry store is intrinsic to the charged offenses. It was part of the discussion in which Fugate and Slater decided to rob Hosler's—the charged offense. Therefore, the admission of the evidence did not violate rule 404(b). In addition, the evidence had a high probative value, as it showed that Slater actively took part in determining which location the group would burglarize. Furthermore, in light of all the evidence presented against Slater, including the testimony of Fugate and other witnesses who saw Slater break into Hosler's, its prejudicial effect was low. Therefore, we find that the trial court did not err in admitting Fugate's testimony.

## II. Sentencing Challenge

[18] Slater also argues that his sentence was inappropriate in light of the nature of the offenses and his character. On appeal, this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the

Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). However, this Court does not substitute its judgment for that of the trial court. *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind. Ct. App. 2003). Under Appellate Rule 7(B), the question is not whether it is more appropriate to impose a different sentence upon the defendant, but whether the defendant's sentence is appropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). On appeal, the defendant bears the burden of persuading this Court that the sentence he received is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19] Regarding the nature of the offenses, Slater perpetrated multiple crimes over several weeks. On two separate occasions, he threw a brick through the window of Hosler's. In addition, he stole a television from a senior living center and used crowbars to pry open Pepsi machines. Slater had time between these crimes to determine that he would not repeat his behavior and instead chose to perpetrate more crimes. Futhermore, although Slater was convicted of multiple crimes, the trial court ordered that his sentences for those convictions be served concurrently. We do not find that Slater's sentence was inappropriate in light of the nature of his offenses.

[20] In considering Slater's character, we note that he has an extensive criminal history. He has prior convictions for eight misdemeanors and six felonies. In addition, as a juvenile, he was adjudicated a delinquent when he committed burglary. Slater has been given many opportunities for rehabilitation. He has received probation in four cases, and, in all of those cases, he has violated

probation. While Slater admits to having a drug problem and has received substance abuse treatment during a prior incarceration, it is clear that he continues to use drugs and that he committed these offenses in order to sustain his drug use. Under these circumstances, we do not find that Slater's sentence is inappropriate in light of his character.

The judgment of the trial court is affirmed.

Friedlander, J., and Crone, J., concur.